S & S INDUSTRIES, INC., a Minnesota corporation, f/d/b/a S & S Manufacturing, Inc., Plaintiff,

v.

NAKAMURA–TOME PRECISION INDUSTRIES CO., LTD., a Japan corporation; Nakamura-Tome America Corporation, an Illinois corporation; Kanematsu-Gosho (U.S.A.), Inc., a New York corporation; and Fanuc U.S.A. Corporation, an Illinois corporation, Defendants.

No. 4–81–Civ. 429.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 23, 1982.

James W. Reuter, Barna, Guzy, Merrill, Hynes & Giancola, Fridley, Minn., for plaintiff.

Edward M. Laine, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for defendants.

## MEMORANDUM ORDER

LARSON, Senior District Judge.

The issue presented in this motion is whether service on a wholly owned subsidiary is sufficient service of process on a Japanese parent corporation. After consideration of the arguments of the parties as well as the applicable statutes, rules, and case law, this Court concludes that defendant Nakamura-Tome Precision Industries Co., Ltd. (N–T Japan)'s motion to dismiss [1] for insufficiency of service of process should be denied.

Plaintiff in this diversity action is S & S Industries, Inc. (S & S), a corporation formed under the laws of Minnesota with its principal place of business in Minnesota. Defendants are N–T Japan, a corporation formed under the laws of Japan with its principal place of business in Japan; Nakamura-Tome America Corporation (N–T America), a corporation formed under the laws of Illinois with its principal place of business in Illinois; Kanematsu-Gosho (U.S. A.), Inc. (K–G America), a corporation formed under the laws of New York with its principal place of business in New York; and Fanuc U.S.A. Corporation (Fanuc America), a corporation formed under the laws of Illinois with its principal place of business in Illinois.[2]

---

1. Defendant's notice and motion filed with the Clerk of Court seeks an Order of dismissal. Defendant's memorandum submitted to the Court seeks an Order quashing service of process. These are distinct courses of action, although they are often requested in the alternative. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1354, at 584–87 (1969).

2. Concurrent with the motion of N–T Japan, Fanuc America moved to dismiss for failure to state a claim upon which relief can be granted.

On or about April 18, 1979, plaintiff purchased a machine tool with computer control. The machine tool was manufactured by N–T Japan in Japan, while the computer control was manufactured by Fujitsu Fanuc, Ltd. (Fanuc Japan) in Japan and sold by Fanuc Japan to N–T Japan. N–T Japan sold the machine tool and computer control to Kanematsu-Gosho, Ltd. (K–G Japan), which in turn sold the goods to K–G America. K–G America, then an importer and distributor of N–T Japan products in the United States, sold the machine tool and computer control to plaintiff. N–T America and Fanuc America subsequently became involved in such matters as installing and servicing the machine tool and computer control.

S & S seeks recovery for losses due to the malfunctioning of the machine tool and computer control. In its five count complaint S & S alleges breach of express warranties, breach of implied warranties, negligence, misrepresentation, and revocation of acceptance by S & S.

On July 24, 1981, the United States Marshal served attorney Masaru Funai with process for N–T America, N–T Japan, and Fanuc America at Funai's office in Chicago, Illinois.[3] Funai is the registered agent for service of process upon N–T America and Fanuc America. S & S stated in its instructions to the Marshal for service on N–T Japan that "Masaru Funai is the registered agent for service of process of Nakamura-Tome America Corporation which is an agent of Nakamura-Tome Precision Industries Co., Ltd."

In addition to instructing the Marshal to serve N–T Japan by serving Funai, S & S also instructed the Marshal to serve N–T Japan by serving the Secretary of State of the State of Minnesota. In its instructions to the Marshal, S & S stated that it was requesting "[s]ervice on a foreign corporation by serving the Secretary of State, State of Minnesota, pursuant to Minnesota Statute 303.13(3)." The Secretary of State was served on July 30, 1981.[4]

On December 10, 1981, N–T Japan moved to dismiss under F.R.Civ.P. 12(b) on grounds of insufficiency of service of process. N–T Japan argues that Funai is not the registered agent for service of process on N–T Japan and that service on a subsidiary corporation does not constitute service upon the parent corporation.

N–T America is the wholly owned subsidiary of N–T Japan. All of the directors and officers of N–T America reside in Ishikawa, Japan, the city where the head office of N–T Japan is located. Plaintiff alleges that all of the directors and officers of N–T America are directors, officers, or employees of N–T Japan. N–T America was incorporated on April 17, 1980. Plaintiff alleges that prior to the incorporation of N–T America, N–T Japan marketed and serviced its products in the United States, primarily through branch offices located in Chicago and Los Angeles, and secondarily through dealers and distributors. On March 31, 1980, N-T Japan announced the opening of N–T America which it described as a "liason [sic] sales & service office of Nakamura-Tome Precision Inc. Co., Ltd. Japan." It appears that N–T America's business is limited to selling and servicing N–T Japan's products. N–T America maintains its business books and records separate from those of N–T Japan, and N–T America files its own tax returns.

Plaintiff alleges that N–T Japan made warranties concerning the machine tool and computer control. These warranties were made both directly and through an alleged agent, the now defunct Mid-America Machine Tool Sales, Incorporated, a Minnesota corporation. Plaintiff further alleges that K–G America, acting as N–T Japan's agent,

---

The parties informed the Court at the time of oral argument that Fanuc America will be dismissed without prejudice.

3. Defendant K–G America was served by registered mail at its office in New York, New York.

4. There is no indication in the files whether the Secretary of State mailed the process as required by Minn.Stat. 303.13, subd. 1(3) (1980). It is also unknown whether S & S served the other defendants by serving the Secretary of State.

marketed and helped install and service the machine tool and computer control. In April 1980 Kevin Tsjui of N–T America attempted to make repairs at plaintiff's plant in Minnesota, and plaintiff claims that by letter of April 29, 1980, N–T America extended N–T Japan's warranty. In September 1980 N–T America wrote S & S that "we have, as you know, dispatched our chief engineer, Mr. Shinchi, to double check your machine." Shinchi traveled from Japan to the Minnesota plant, and he left a business card indicating that he was employed by N–T Japan. In addition to the service call by Mr. Shinchi, plaintiff claims that N–T America arranged for at least two additional repair visits and that the repair men gave S & S service report forms bearing the name of N–T Japan. Plaintiff's counsel addressed a number of letters of complaint to N–T Japan at the address of N–T America in Chicago, and in each case he received a response from N–T America. Up until September 1980 N–T America's letters to S & S were written on N–T Japan's stationery, but defendant maintains that this was merely an aspect of the transition period during which the Chicago office of N–T Japan became N–T America.

Defendant admits that its motion to dismiss is a "technical motion" insofar as there does not appear to be a statute of limitations problem and S & S could simply reserve process if defendant is successful in this motion. Defendant also admits that service upon N–T America was perfectly adequate for purposes of giving N–T Japan notice of the suit against it. These circumstances alone might be enough for the Court to deny defendant's motion. Examination of the relevant statutes, rules, and case law further demonstrates that service of process was sufficient and that defendant's motion cannot be granted.

In this case there are three relevant provisions of the Federal Rules of Civil Procedure that pertain to service upon foreign corporations. F.R.Civ.P. 4(d)(3) allows service upon an agent "authorized by appointment or by law."[5] It is an unsettled question, but there is authority recognizing that an agent "authorized ... by law" can be one authorized by State law, such as a secretary of state. See 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1101, at 384 (1969). F.R.Civ.P. 4(d)(7) allows service "in the manner prescribed by the law of the state in which the district court is held."[6] F.R.Civ.P. 4(e) allows service upon a corporation not found within the state according to the law of the state.[7]

**5.** F.R.Civ.P. 4(d)(3) provides that service shall be made as follows:

"Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

**6.** F.R.Civ.P. 4(d)(7) provides that service shall be made as follows:

"Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action

brought in the courts of general jurisdiction of that state."

**7.** F.R.Civ.P. 4(e) provides that service shall be made as follows:

"*Same: Service Upon Party Not Inhabitant of or Found Within State.* Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment

There is overlap between all three of these rules, but in the present context it is not necessary to determine the precise scope of each so long as process was served according to applicable State law. *See* C. Wright & A. Miller, *supra*, § 1101, at 384, § 1114, at 649, § 1116, at 473, 478–80.

Two provisions of Minnesota statutes address service on foreign corporations. Minn.Stat. 303.13, subd. 1(3) (1980) provides that by the making of a contract or the commission of a tort, a foreign corporation authorizes the Minnesota Secretary of State to serve as its agent for the service of process:

"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if a foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the state of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of the contract or tort. Process shall be served in duplicate upon the secretary of state, together with a fee of $10 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of the mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally on it within the state of Minnesota."

or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances

Minn.Stat. 543.19 (1980) provides that by engaging in certain acts a foreign corporation may be personally served outside the State:

"Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual, or his personal representative, in the same manner as if it were a domestic corporation or he were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or non-resident individual:

(a) Owns, uses, or possesses any real or personal property situated in this state, or

(b) Transacts any business within the state, or

(c) Commits any act in Minnesota causing injury or property damage, or

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial "justice; or

(3) the cause of action lies in defamation or privacy.

Subd. 2. The service of process on any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the summons upon the defendant outside this state with the same effect as though the summons had been personally served within this state.

Subd. 3. Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

and in the manner prescribed in the statute or rule."

Section 303.13, subd. 1(3) can be employed under F.R.Civ.P. 4(d)(7) and possibly under F.R.Civ.P. 4(d)(3). Section 543.19 can be employed under F.R.Civ.P. 4(d)(7) and F.R. Civ.P. 4(e).

Whether section 303.13, subd. 1(3) or section 543.19 is invoked, the salient question for purposes of this motion is the same. Both Minnesota statutes ultimately call for delivery to the defendant out of state, and thus the key issue is whether service upon N–T America was sufficient as service upon N–T Japan.

One commentator has noted that

"where the parent company has complete control over the subsidiary, conducting its business and directing its policies . . . [or where the subsidiary] is a mere adjunct and instrumentality of the parent . . . [or] if a subsidiary corporation is merely a 'dummy' by means of which the parent corporation does business in the state, service on the subsidiary may bind the parent company."

8A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 8773, at 252–53 (perm. ed. 1977) (footnotes omitted); *see also* 4 C. Wright & A. Miller, *supra*, § 1104, at 401–04. For examples of cases upholding service upon a subsidiary as a means of reaching a parent corporation *see Tokyo Boeki (U. S. A.), Inc. v. SS Navarino*, 324 F.Supp. 361 (S.D.N.Y.1971); *K. J. Schwartzbaum, Inc. v. Evans, Inc.*, 44 F.R.D. 589 (S.D.N.Y.1968); *Greene v. Swissair Transport Co. Ltd.*, 33 F.R.D. 13 (S.D. N.Y.1963).

In *Tokyo Boeki (U. S. A.), Inc.*, service was made on the wholly owned American subsidiary of a Japanese parent corporation. The court found service sufficient insofar as the parent had dealt previously in New York, the boards of directors of the two corporations had a number of common members, the subsidiary was listed as an overseas office on the letterhead of the parent, the employees of the subsidiary had formerly worked for the parent, and there were other points of overlap. In *K. J. Schwartzbaum, Inc.*, service was made on the wholly owned New York subsidiary of a Delaware parent corporation with its principal place of business in Chicago. The court found service on the subsidiary proper in light of the parent's control over the subsidiary, the interlocking management of the two companies, the role of the parent in the everyday activities of the subsidiary, and other factors. The court stated that:

"where a corporation has a wholly-owned subsidiary performing services which would ordinarily be performed by its own service employees, . . . the parent company should not be allowed to hide behind the corporate fiction but, rather, should be required to submit to the jurisdiction of the court located in that District in which the parent corporation, for all intents and purposes, transacts its business." 44 F.R.D. at 590–91.

In *Greene*, service was made on a New York corporation that served as a conduit for the purchase of services from a Swiss corporation with common ownership and management. In upholding service the court noted:

"[w]here a subsidiary of a foreign corporation is the 'mere instrumentality' of that foreign corporation, it is the latter's agent for acceptance of service of process." 33 F.R.D. at 14.

It is apparent that even though N–T America and N–T Japan are separate corporations with distinct financial records and books, service on the former is sufficient in a suit against the latter. As noted above, N–T America was formed to handle sales and service operations in this country that had formerly been handled by its parent. There is overlap in the control and management of the two companies; employees of N–T America seem to perform functions for N–T Japan and vice versa. Most importantly, there is no question that service on the registered agent of N–T America was sufficient to give N–T Japan notice of the suit against it. *See, e.g., Fooshee v. Interstate Vending Co.*, 234 F.Supp. 44, 52 (D.Kan.1964); *K. J. Schwartzbaum, Inc.*, 44 F.R.D. at 593.

In support of its motion to dismiss defendant has cited a case in which the court

held service on a wholly owned subsidiary insufficient in an action against a Japanese parent corporation. *See Stoehr v. American Honda Motor Co.*, 429 F.Supp. 763 (D.Neb.1977). It is important to note, however, that the court endorsed the general principle that service on a subsidiary which is the mere instrument of a parent corporation can be sufficient, and emphasized that the propriety of service on a subsidiary is essentially a factual question to be decided in each instance. *Id.* at 766. Of the relationship between the parent and the subsidiary corporations in that case the court said:

> "[t]he creation of a separate corporation to distribute products manufactured by the parent corporation within a given area and the maintenance of an interlocking directorate which in each case amounts to only a minority of the Board of Directors are not sufficient without more to find that the parent corporation so dominates the subsidiary as to effectively treat it as a division of the parent corporation." 429 F.Supp. at 766.

The present case is distinguished in that S & S has demonstrated a higher degree of intermingling in management and operation between N–T Japan and N–T America. Further, the *Stoehr* opinion might be faulted for exclusive focus on agency principles and the question of whether the two corporations actually operated as a single entity without attention to what should be the fundamental issue: whether service on the subsidiary provided the parent with adequate notice.

IT IS ORDERED:

Defendant's motion to dismiss for insufficiency of service of process is denied.