## VIDEOTRONICS, INC., a Nevada corporation, Plaintiff,

v.

## BEND ELECTRONICS, Videotronics of Oregon, Inc., Video Horizons of Oregon, Inc., (an Oregon corporation), Tom Hendrix, an individual; Bill Stanard, an individual, and Ross Brown, an individual, Defendants.

No. CV–R–83–106–ECR.

United States District Court, D. Nevada.

June 6, 1983.

---

Kenneth J. McKenna, Reno, Nev., for plaintiff.

Valerie N. Strandell and John J. Frankovich, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff, Videotronics, Inc., a Nevada corporation, seeks a preliminary injunction to restrain defendants from manufacturing, advertising or selling a video amusement device, which plaintiff alleges was developed through misappropriation of trade secrets of plaintiff and through a breach of a confidential relationship between plaintiff and defendants. Plaintiff also seeks to enjoin alleged "palming off" of plaintiff's product, an electronic video poker game machine, by defendants.

The defendants, Video Horizons, Inc., an Oregon corporation, (VHI), Tom Hendrix, Bill Stanard and Ross Brown, have moved to quash the service of summons and complaint heretofore made upon them.

This case was originally filed in the Second Judicial District Court of the State of Nevada and was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1332.

Hearings upon these motions were held before this Court on May 6 and May 23, 1983, during which evidence and argument were received. The Court has also considered the affidavits and other evidence filed by the parties in connection with their motions and the responses thereto.

FACTS.

Plaintiff is in the business of manufacturing electronic video game devices. As indicated, the particular device at issue in this case is an electronic video poker game. In 1981, defendant Bend Electronics, an Oregon corporation (Bend), began acting as a distributor of plaintiff's products. Bend, which later changed its name to Videotronics of Oregon, Inc., (VO), purchased a considerable quantity of such products from plaintiff and, on that account, it is alleged accumulated a substantial obligation to plaintiff. That alleged obligation is the subject of a separate suit brought in Oregon.

At the time that the dispute over monies claimed to be owed by Bend and VO to plaintiff arose, plaintiff refused to ship any further products to VO. In late 1982 defendant Video Horizons, Inc., (VHI), which plaintiff now asserts is a "substituted corporation" for VO, came into existence. Defendants allege that VO and VHI are completely separate corporate entities and have submitted evidence indicating that these companies have some different officers and directors and to some extent different shareholders. Defendants do not deny that VO and VHI operate in the same premises and use the same telephone number. Plaintiff has submitted evidence that creation of VHI was but a name change for VO, although VO remains as a corporate entity. It is noted that Bend and VO were never in the manufacturing business and that VHI is also in the business of manufacturing and distributing electronic devices.

There is no dispute that Bend and VO did transact business in Reno, Nevada, through their agents. It is also clear that all of the business formerly conducted by Bend and VO is now conducted by and through VHI and that no business is any longer being conducted by VO. Though defendants assert that VO was created to distribute the video poker machines manufactured by plaintiff and ceased doing business when it no longer had machines to distribute, the Court does not see a significant difference between the two corporations where VHI was allegedly created in order to manufacture as well as distribute the very same machines which are the subject of this action.

Significant also is the fact that with only minor differences the corporate structure and stock ownership of VO and VHI involve the same small group of individuals. It is also curious that all of the tangible assets of VO were transferred to VHI upon its incorporation but that many of its outstanding debts have remained unpaid. At the same time a loan of some $10–$15,000 was made by VO to Tom Hendrix (President of both VO and VHI) who in turn loaned the money to the newly created VHI.

The undisputed evidence is that VHI has copied plaintiff's electronic video poker game. Some modifications have been made in the device manufactured and now sold by VHI, but these do not appear to be substan-

**1474**

tial in relation to the function or design of the device.

There was no written agreement between plaintiff and defendant containing any requirement that defendants maintain secrecy as to any of the equipment, programs, or the design of the equipment which Bend/VO distributed. None of plaintiff's equipment which is the subject of this case appears to have been patented or copyrighted.

## I. THE MOTION TO QUASH THE SUMMONS AND COMPLAINT.

The question presented is whether the defendants VHI, Hendrix, Stanard and Brown are subject to the *in personam* jurisdiction of this Court. Defendants Bend and VO have not joined in this motion and have made general appearances herein, so that the jurisdiction of this Court over those two defendants is not in question.

■ The burden of proving the existence of a factual basis for the exercise of *in personam* jurisdiction is on the plaintiff. *Northcross v. Joslyn Fruit Co., Inc.,* 439 F.Supp. 371 (D.Ariz.1977). Rule 4(e) of the Fed.R.Civ.P. allows service of process under the state's long-arm statute. The Nevada long-arm statute, NRS 14.065, has been interpreted as conferring jurisdiction to the limits permitted by the United States Constitution. *Davis v. Eighth Judicial District of State of Nevada,* 97 Nev. 332, 629 P.2d 1209 (1981). In this regard federal law is controlling on the issue of due process under the United States Constitution. *Amba Marketing Systems v. Jobar International, Inc.,* 551 F.2d 784, 789 (9th Cir.1977).

The United States Supreme Court recently discussed the restriction of the Due Process Clause under the reach of state long-arm statutes in *World Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In quoting from the seminal case of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Court said that " 'defendant's contacts with the forum state must be such that maintenance of the suit' does not offend traditional notions of fair play and substantial justice."

■ For the purposes of determining whether *in personam* jurisdiction may be obtained over VHI under Nevada's "long-arm" statute, NRS 14.065, the Court finds that it has been shown by a preponderance of the evidence that there is no independence between VO and VHI, and that VHI was created in order to continue and expand the activity formerly engaged in by VO. In this connection the Court further finds that traditional notions of fair play and substantial justice are not violated by attributing conduct in the State of Nevada by VO to VHI under these circumstances for the purposes of establishing personal jurisdiction over VHI. By analogy the Court relies upon the line of authority which stands for the proposition that if a subsidiary corporation is so completely dominated and controlled by the parent corporation that it becomes a mere instrumentality of the parent, the parent can be found to be doing business within the forum state for the purposes of subjecting the parent to the jurisdiction of the state courts. *Wells Fargo & Company v. Wells Fargo Express Co.,* 556 F.2d 406 (9th Cir.1977); *United Steel Workers of America v. Copperweld Steel Company,* 230 F.Supp. 383 (W.D.Pa.1964); 4 Wright & Miller, *Federal Practice & Procedure,* § 1069, 255–257 (1976).

While the situation posed in the instant case, of course, does not involve a parent-subsidiary corporate relationship, the facts are just as compelling to make such a finding where, as here, one corporate entity is, in effect, merely substituted for that of another. The great overlap in control and management of the two corporate entities is a factor the Court should not ignore. *S & S Industries, Inc. v. Nakamura-Tome Precision Industries Company, Ltd.,* 93 F.R.D. 564 (D.Minn.1982).

In sum, the Court finds that defendant VO did transact business within the State of Nevada, and that the instant action did, in effect, arise from such conduct in that plaintiff's claims go to alleged misappropriation of trade secrets stemming from the transactions conducted by defendant VO's agents in Nevada. Moreover, defendant VHI is also bound by the acts of the agents

of VO in Nevada for purposes of determining whether defendant VHI is amenable to service of process in this action pursuant to Rule 4(e) of the Fed.R.Civ.P.

■ There is insufficient evidence for this Court to find the necessary jurisdictional facts which would subject the three individual defendants, Hendrix, Stanard and Brown, to the jurisdiction of this Court.

The conduct of each of these individual defendants within the State of Nevada appears to have been as agents of the various corporate defendants. The motion to quash should be granted on behalf of defendants Hendrix, Stanard and Brown because, "Under the 'fiduciary shield' doctrine, the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity. *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 92–93 (2d Cir.1975)." *Bulova Watch Co., Inc. v. K. Hattori & Company, Ltd.,* 508 F.Supp. 1322, 1347 (E.D. N.Y.1981).

## II. THE MOTION FOR PRELIMINARY INJUNCTION.

■ The threshold question as to whether the preliminary injunction should issue is whether either the circuit design (hardware), the character generator mechanism, or computer program (software) of the plaintiff's video poker game constitute a trade secret. Since this is a diversity action the Court applies the law of the State of Nevada. Where controlling Nevada precedent is lacking the Court will turn to the generally accepted principles of the common law of trade secret and unfair competition. NRS 598.490(2). The generally accepted definition of a trade secret is that found in Restatement of Torts § 757, comment b (1939):

"[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers."

"In order to succeed on the merits of its trade secret claim, plaintiff must demonstrate that (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means. Restatement of Torts § 757 (1937)." *Rapco Foam, Inc. v. Scientific Applications,* 479 F.Supp. 1027, 1029 (S.D.N.Y. 1979). The Restatement of Torts § 757 further indicates that other factors to be considered in determining whether a trade secret exists are: (1) the degree of secrecy both within and without the plaintiff's business; (2) the efforts by plaintiff to develop the process and to preserve its secrecy; (3) the value of the process to the plaintiff and its competitors; and (4) the difficulty with which the process could be duplicated by others. *Motorola, Inc. v. Fairchild Camera & Instrument Corp.,* 366 F.Supp. 1173 (D.Ariz.1973). Public disclosure of a trade secret destroys any confidential relationship upon which a trade secret is based. *Servo Corporation of America v. General Electric Company,* 393 F.2d 551 (4th Cir.1968).

■ It is clear from the record and evidence received herein that plaintiff expended substantial time and expense in developing its "Challenger Wild Poker" video device. Assuming that the unique circuit design and computer video program display constituted trade secrets under the above definition the Court must consider whether defendants use of the plaintiff's device in the substantially similar machines now manufactured by defendant VHI was appropriated through breach of a confidential relationship as maintained by plaintiff.

Regardless of the reason or motivation behind the deterioration of the distributorship relationship between plaintiff and defendants, it is clear that the means used to duplicate plaintiff's poker machine was not unlike that which may have been employed by any owner of one of plaintiff's devices. In particular the Court is sensitive to plaintiff's claims regarding the duplication of

the information stored upon the tiny silicon computer "chips." These "chips," or software, store the instructions and data of a computer program.

Unlike the electronic circuit boards which can easily be recreated through observation by a trained individual equipped with a schematic diagram such as that supplied by plaintiff to its customers, the owners of its "Challenger Wild Poker" device here, the actual computer program stored on the "chip" can be copied much in the same manner as one might record the contents of a phonograph record or cassette tape without knowing really exactly what the various detailed complexities of such information is or how it was actually created. In any event, where such a computer program is made readily available to the public such as "Challenger Wild Poker" is here, its contents may not be deemed a trade secret unless access to it is actually treated as a secret as in a situation such as that in *J & K Computer Systems, Inc. v. Parrish,* 642 P.2d 732 (Utah 1982), a case relied upon by plaintiff. Protection for such a property interest freely distributed to the general public must, and in the view of the Court as seen below, does, come from someone else.

While the parties have obliterated any distinction between the two, the tort of misappropriation created out of whole cloth by the Supreme Court in *International News Service v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), and which exists independently from the law of trade secrets, is seemingly also involved in this case. As found in J. Thomas McCarthy, *Trademarks & Unfair Competition,* § 10:25 p. 322 (1973) three elements are needed to prove a case of misappropriation:

(1) Plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that "thing" as a kind of property right.

(2) Defendant has appropriated the "thing" at little or no cost, such that the court can characterize defendant's actions as "reaping where it has not sown."

(3) Defendant has injured plaintiff by the misappropriation.

Upon first impression this appears to be a classic case for application of the law of misappropriation. In the eyes of the Court a strong case on the merits has been established by plaintiff at this stage in that each of the above three elements have apparently been met here. That federal law of patent and copyright preempts areas that otherwise would be subject to the state law of unfair competition and misappropriation is a matter which has been discussed and defined, albeit not necessarily with great clarity, by the Supreme Court on several occasions. *Sears, Roebuck & Co. v. Stiffel,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corporation v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964); *Goldstein v. California,* 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973); *Kewanee Oil Company v. Bicron Corporation,* 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974).

Without discussing these important cases in detail it is clear that in certain instances, an intellectual property which falls outside the protection of either federal copyright or patent law may still be found to not be entitled protection under state law regardless of theory because federal policy favors preemption of the area in question. It is even clearer, however, that a property which is subject to protection under federal patent or copyright law cannot also obtain the benefit of protection under either state unfair competition or misappropriation law for the same reasons.

This point is well illustrated by *Synercon Technology v. University Computing,* 474 F.Supp. 37 (N.D.Tex.1979). There the Court found that the developer of new input formats, instruction manuals and related services to provide more simplified access to a computer program for structural analysis was not entitled to protection under the state misappropriation doctrine even though the court had previously found plaintiff's material were the type of things covered by copyright laws although not entitled to protection thereunder. The Court concluded in its well reasoned decision that allowing extension of the state law doctrine of misappropriation into such an area al-

ready covered by copyright law would constitute an unacceptable conflict with federal policy.

The facts here present an even more compelling case for finding that an unacceptable conflict with federal policy would be created were the court to apply the state doctrine of misappropriation in this instance. That is, the great weight of authority indicates that the essence of the intellectual property the plaintiff seeks protection for—the computer program which is responsible for the unique character generator mechanism of the "Challenger Wild Poker" device—is entitled to protection under copyright law. *Williams Electronics, Inc. v. Artic International, Inc.,* 685 F.2d 870 (3d Cir.1982); *Atari, Inc. v. North American Philips Consumer Electronics Corporation,* 672 F.2d 607 (7th Cir.1982); *Stern Electronics, Inc. v. Kaufman,* 669 F.2d 852 (2nd Cir.1982); *Midway Manufacturing Company v. Omni Video Games, Inc.,* 668 F.2d 70 (1st Cir.1981). *Cf. Apple Computer, Inc. v. Franklin Computer Corporation,* 545 F.Supp. 812 (E.D.Pa.1982).

The analysis of Judge Hill in the recent case of *Apple Computer, Inc. v. Formula International, Inc.,* 562 F.Supp. 775 (C.D. Cal.1983) is most helpful. The question there was whether the federal Copyright Act extends protection to the photochemically imprinted silicon chip (Read-Only Memory, ROM) which stores the information constituting the computer program. In finding that the Copyright Act does apply to computer programs, or "software," the Court was persuaded that, under the 1980 amendments to the Copyright Act, Congress intended to extend copyright protection to computer programs. Some of the changes in the copyright law in 1980 were enacted pursuant to recommendations made by the National Commission on New Technological Use of Copyright Works (CONTU). CONTU was a body created by Congress to consider major public policy questions in the copyright field. The factual situation faced by the Court in the *Formula International* case is substantially similar to that presented here in that the defendant was accused of copying the program in the plaintiff's software. Some of the court's analysis seems particularly appropriate here:

"But Apple does not dispute the right of defendant to market programs which perform the *exact same function or purpose* as do Apple's own programs. The gravamen of Plaintiff's complaint is that Defendant should not be allowed to market programs which perform the same function in the *exact same manner* as Plaintiff's. Quite simply, under the Court's decision, Defendant will still be free to produce programs which result in the machine performing the same calculations, set-ups, memory loading, etc., as Plaintiff's software does and thus compete with Plaintiff in the software market. Defendant will not, however, be free to do so by copying the exact number and sequence of bytes or items by which Plaintiff's program causes the machine to operate.

The policy argument made by plaintiff is well taken. That is, the law should encourage technical innovation such as that employed by the unique program designed for plaintiff's video game by prohibiting others from copying such a program in much the same fashion as one might record a phonograph record and then market that product as his own. Congress has acted in this regard by extending broad protection to certain aspects of audiovisual technology under the 1976 Copyright Act, as amended in 1980, 17 U.S.C. § 101, *et seq.* The plaintiff, however, has apparently not sought protection under the Copyright Act up to this time. Because the Court has found that the plaintiff's property interest in the computer programs contained in its electronic video device is covered by the Copyright Act, relief under the state common law doctrines of misappropriation and trade secret cannot be obtained here.

█ Finally, the plaintiff also seeks to enjoin defendants from "palming off" their video poker games as those manufactured by the plaintiff. While there is some indication that defendant VHI may well have engaged in such conduct in the past the plaintiff does not seriously contend that

defendants are presently "palming off" in violation of NRS 598.410. Hence, it appears that any relief plaintiff may be entitled to in this regard may be adequately provided in the form of monetary compensation which may be awarded upon trial on the merits. With the exception of the "palming off" claim, the Court has found that plaintiff has failed to make more than a weak showing on the merits of all aspects of this action and therefore a preliminary injunction is inappropriate at this time, whether the Court applies the traditional formula, *Anaheim v. Kleppe,* 590 F.2d 285, 288 (9th Cir.1978), or the alternative test, *Benda v. Grand Lodge of International Association,* 584 F.2d 308, 315 (9th Cir.1978).

IT IS HEREBY ORDERED that the motion to quash filed by defendants Hendrix, Stanard, Brown and Video Horizons, Inc., on April 5, 1983, is GRANTED as to defendants Hendrix, Stanard and Brown.

IT IS FURTHER ORDERED that said motion to quash is DENIED as to defendant Video Horizons, Inc.

IT IS FURTHER ORDERED that the motion for preliminary injunction filed by plaintiff is hereby DENIED.