Richard J. BRIGNOLI, Plaintiff,

v.

BALCH HARDY AND SCHEINMAN, INC., Peter Scheinman and Steve Hardy, Defendants.

No. 86 Civ. 4103 (RWS).

United States District Court, S.D. New York.

Sept. 30, 1986.

Arie E. David, New York City, for plaintiff.

Fink, Weinberger, Fredman, Berman & Lowell, P.C., New York City, for defendants; Paul A. Feigenbaum, of counsel.

SWEET, District Judge.

Defendants Balch, Hardy and Scheinman, Inc. ("BHS"), Peter Scheinman ("Scheinman") and Steve Hardy ("Hardy") have moved for an order dismissing the amended complaint for failure to state a cause of action and imposing sanctions on plaintiff and his counsel. For the reasons stated below, the motion to impose sanctions is denied, and the motion to dismiss the complaint is granted in part and denied in part.

**The Amended Complaint**

According to the amended complaint, prior to November, 1978, plaintiff Richard Brignoli ("Brignoli") created and developed computer programs incorporating liquid secondary option market formulas for use in options account management. BHS is a New York corporation registered as an investment advisor with the Securities and Exchange Commission that manages the options trading activities of institutional clients. Its shareholders are William Balch ("Balch") and defendants Scheinman and Hardy. In 1978 Brignoli and defendant BHS are alleged to have entered into an agreement whereby BHS would offer Brignoli's computer programs on a "month-to-month" basis in return for fees equal to 30% of the gross revenues earned by BHS from each of the clients for whose benefit the programs would be used. On or about November 14, 1978, Brignoli and BHS executed a writing acknowledging that certain computer programs were "developed by Richard Brignoli," were "his exclusive property" and could be used by BHS "subject only to the content" of the writing, which contained a provision requiring that BHS obtain the prior approval of Brignoli for each client or account. The writing does not include any terms of payment or specify a time limit.

The amended complaint also alleges that Balch, an officer of BHS, arranged on or about November 14, 1978 for payments to be made to Brignoli through third-party brokers with whom BHS placed orders. It is further alleged that on or about April 12, 1982 Brignoli and BHS agreed to reduce

the payments from 30% to 25% for future clients. Brignoli claims that he received payments from those brokers pursuant to the agreement between Brignoli and BHS but that they were less than the agreement provided for and stopped in March, 1986 although BHS has continued to use Brignoli's programs.

Although defendants assert that they had no financial obligation whatsoever to Brignoli, it is conceded by BHS that BHS would inform Brignoli or Brignoli Models, Inc. ("BMI"), a consulting firm with which Brignoli was associated, how much to invoice the brokers for the previous month. The brokers then paid the consultants. BHS alleges that at present it is not using anything that belongs to Brignoli.

Brignoli seeks money damages, imposition of a constructive trust and an injunction in connection with the alleged improper use of Brignoli's computer programs. In his First Claim, Brignoli alleges that defendant BHS breached its oral agreement with Brignoli to pay him a percentage of its gross revenues from clients for whom Brignoli's computer programs were used. Brignoli's Second Claim alleges breach of the written agreement between BHS and Brignoli to obtain the prior approval of Brignoli before using his programs for particular customers and wilful unauthorized use of plaintiff's property.

In his Third Claim, Brignoli alleges that at various times from 1979 to the present, BHS, Balch, Hardy and Scheinman falsely represented to him that the payments he was receiving conformed to the 25% and 30% of BHS' revenues as agreed upon. In his Fourth Claim, Brignoli alleges that BHS and Balch "craftily" drafted the November 14 agreement and never planned to abide by the agreement. Brignoli's Fifth Claim states that BHS refused to stop using the programs despite notice from Brignoli that such use is unauthorized. The Sixth and Seventh Claims allege unfair competition and wrongful appropriation in connection with alleged inducement of Brignoli's associates to disclose confidential information and alleged disparagement of Brignoli's products.

Finally, the Eighth Claim alleges that defendants Scheinman and Hardy knew of the alleged misrepresentation, misappropriation, unfair competition and disparagement by the corporate defendant and knowingly received from the corporate defendant sums of money derived therefrom.

**Copyright Pre-emption**

■ Although Brignoli has dropped all claims of copyright infringement against defendants, defendants assert in their motion to dismiss the amended complaint that Brignoli's first seven claims are based on a right equivalent to exclusive rights within the scope of copyright, and therefore are precluded by 17 U.S.C. § 301(a). *See Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 615 F.Supp. 838, 856 (S.D.N.Y.1985) (*citing Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 919 (2d Cir.1980)). 17 U.S.C. § 301(a) provides that: "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... are governed exclusively by this title." To fall within 17 U.S.C. § 301(a) pre-emption, (1) the work in question must be within the subject matter of copyright as defined in 17 U.S.C. §§ 102, 103 and (2) the state law created right must be equivalent to any of the exclusive copyright rights in 17 U.S.C. § 106. *See Universal City Studios*, 615 F.Supp. at 856–57.

■ The great weight of authority indicates that computer programs are entitled to protection under copyright law. *Videotronics, Inc. v. Bend Electronics*, 564 F.Supp. 1471, 1477 (D.Nev.1983); *see, e.g., Williams Electronics, Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 875 (3d Cir.1982); *Apple Computer Inc. v. Formula Int'l, Inc.*, 562 F.Supp. 775 (C.D.Cal.1983), *aff'd*, 725 F.2d 521 (9th Cir.1984). The fact that portions of the computer programs may be uncopyrightable as "ideas" rather than "expressions," *see Q–Co Industries, Inc. v. Hoffman*, 625 F.Supp. 608, 616, (S.D.N.Y.1985), does not take the work as a whole outside the subject matter protected by the Act. *See Harper & Row Publishers, Inc. v. Na-*

*tion Enterprises*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

▪ The second element requires that state law claims be equivalent to any of the rights in 17 U.S.C. § 106, that is, the right to "reproduce the copyrighted work," "prepare derivative works," "distribute copies," or "perform" or "display" the copyrighted work publicly. Therefore, to assert a state law claim, a plaintiff must allege rights *"qualitatively* different from the rights of reproduction, performance, distribution, or display." *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 501 F.Supp. 848, 852 (S.D.N.Y.1980), *aff'd in relevant part*, 723 F.2d 195 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *see* 1 Nimmer on Copyrights § 101[B][1] at 1–10, 11.

> The evolving common law rights of "privacy," "publicity," and trade secrets, and the general law of defamation and fraud, would remain unaffected as long as the causes of action contain elements, such as an invasion of personal rights or a breach of trust or confidentiality, that are different in kind from copyright infringement.

*Id.* Pre-emption will not occur "when a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like." *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

▪ A claim that a defendant made unauthorized use of copyrightable material falls squarely within § 301 and thus is pre-empted. *Peckarsky v. American Broadcasting Co.*, 603 F.Supp. 688, 695–96 (D.D.C.1984). Nevertheless, plaintiffs' claims allege more than unauthorized use. Claims One, Two, Four, and Five are essentially breach of contract claims that involve an element beyond unauthorized reproduction and use—a promise to pay plaintiff for use of his product. *Cf. Peckarsky v. American Broadcasting Co.*, 603 F.Supp. 688 (D.D.C.1984) (sustaining breach of contract

and fraudulent misrepresentation claims against motion for summary judgment, even where claims involved unauthorized publication of plaintiff's article). The Fourth Claim is one for fraud, involving the extra element of misrepresentation. *Cf. id.* Although that part of Brignoli's second claim which alleges "willful unauthorized use of plaintiff's property" might seem to come within § 301, Brignoli's allegations that the programs are trade secrets makes this claim "qualitatively different" from a copyright claim. To succeed on a trade secret claim, a plaintiff must demonstrate that "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Videotronics, Inc. v. Bend Electronics*, 564 F.Supp. 1471, 1475 (D.Nev.1983) (quoting *Rapco Form, Inc. v. Scientific Applications, Inc.*, 479 F.Supp. 1027, 1029 (S.D.N.Y.1979).

> Other factors in determining whether a trade secret exists are:
> (1) The degree of secrecy both within and without the plaintiff's business;
> (2) the efforts by plaintiff to develop the process and to preserve its secrecy;
> (3) the value of the process to the plaintiff and its competitors; and
> (4) the difficulty with which the process could be duplicated by others.

*Videotronics, supra*, 564 F.Supp. at 1475. Defendants do not challenge in their briefs the complaint's characterization of the computer programs as trade secrets, and the court cannot conclude from the face of the complaint that they are not. Therefore, the Second Claim is not pre-empted.

▪ The remaining claims also withstand a motion to dismiss on pre-emption grounds. As discussed below, the Sixth Claim alleges a breach of an agreement of confidentiality or duty of confidentiality. Such a claim is not equivalent to a copyright claim. *Cf. Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1536 (S.D.N.Y.1985) (breach of confidentiality claim and claim for unjust enrichment are "possibly not equivalent" to a copyright

claim). The Seventh Claim survives as a "palming off" claim, *see infra,* and as such is not pre-empted. *Cf. Videotronics, Inc. v. Bend Electronics,* 564 F.Supp. 1471, 1477 (D.Nev.1983) (recognizing merit of "palming off" claim, while finding state claim of misappropriation pre-empted).

Therefore, none of Brignoli's claims are pre-empted by the Copyright Act.

**Breach of Contract**

■ Although the First Claim of the amended complaint is framed in terms of breach of contract, the Second and Fifth Claims have breach of contract aspects as well. Because of the confusing way in which Brignoli's Second Claim is pleaded, it appears to state claims for both breach of contract and misappropriation of trade secrets. Here the Second Claim will be treated as one for breach of contract. Brignoli, however, is given leave, albeit reluctantly, to amend his complaint to clarify the Second Claim. The First Claim alleges that BHS breached an oral agreement with Brignoli to pay him a percentage of its gross revenues, while the Second Claim alleges that BHS breached a written agreement to obtain Brignoli's prior approval for each account for which BHS used plaintiff's programs. The Fifth Claim charges defendant BHS with nothing more than failing to stop breaching its contract with Brignoli, and therefore is entirely duplicative of the First Claim. Therefore, the Fifth Claim is dismissed.

According to the defendants, the November 14, 1978 agreement ("Agreement") constitutes the entire agreement between the parties. Therefore, under the parol evidence rule, any other purported agreements are unenforceable. The Agreement makes no mention of financial consideration and explicitly states that Brignoli agrees to BHS' use of his programs "subject only to the content of this agreement." Defendants argue that where the contract is so clearly intended to incorporate the "entire understanding between the parties, evidence of a prior oral agreement which would substantially increase the [defendant's] financial obligation is barred."

*Frankel v. Stein and Day, Inc.,* 470 F.Supp. 209, 213 (S.D.N.Y.1979) (citations omitted), *aff'd w/o op.,* 646 F.2d 560 (2d Cir.1980).

■ However, there is nothing in the language of the Agreement to indicate any further understanding between the parties to explain the existence of contracts between Brignoli and various brokers, such as Exhibit "F" to the Balch affidavit. The execution of those contracts constitutes the only compensation to Brignoli, and it is his allegation as it is understood here that BHS undertook orally to advise Brignoli which customers used his program and to pay a portion of the investment adviser's fees disguised as a payment from the brokers. Indeed the papers establish that BHS advised Brignoli how much to invoice the brokers for the previous month. *See* Affidavit of William Balch, ¶ 36. Although it is far from crystal clear, Brignoli has adequately alleged a non-integrated contract, partly oral, partly written, under which his program was provided to BHS in return for payments to be arranged through brokers.

The defendants have raised the issue of the possible illegality of a purported agreement between Brignoli and BHS under § 28(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(e)(1). Since the nature and existence of an agreement is hotly disputed and the parties have not fully briefed this issue, it will not be addressed at this time.

■ Defendants also argue that enforcement of the alleged oral agreement to pay Brignoli a percentage of gross revenues for use of his computer programs is barred by the statute of frauds. Section 5–701 of the New York General Obligations Law provides that:

a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: 1.

By its terms is not to be performed within one year from the making thereof. An agreement of indefinite duration, in which neither party can unilaterally terminate the contract, falls within the class of agreements covered by the statute. *See Shirley Polykoff Advertising, Inc. v. Houbigant, Inc.*, 43 N.Y.2d 921, 403 N.Y.S.2d 732, 374 N.E.2d 625 (1978).

■ Nevertheless, Brignoli's allegation that the contract was terminable on a month-to-month basis, *see* Amended Complaint ¶ 11, takes this contract out of the category of those not to be performed within one year. The conclusion that the Agreement was not an integrated document, *see supra*, allows consideration of this alleged oral agreement despite the parol evidence rule. Since the contract is thus susceptible of termination by the parties within a year without breach of the contract, *see North Shore Bottling Co. v. Schmidt & Sons*, 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968), the statute of frauds does not apply. Defendants' suggestion that this allegation is designed solely to take this case out of the statute of frauds is well taken. Nevertheless, whether or not the contract was month-to-month is a question for the factfinder and not one to be decided on the pleadings alone. Nevertheless, if the factfinder at trial determines that there was no month-to-month agreement, then defendant can again raise the issue of statute of frauds.

Although the motion to dismiss the contract claims is denied, Brignoli may not seek damages for the years prior to 1980. The limitations period for actions upon a contractual obligation is six years. *See* CPLR § 213(2).

**Fraud**

Brignoli's Third Claim alleges that at various times from 1979, each of the defendants represented to him that the payments made to Brignoli by the brokers conformed to the agreed-upon percentages of BHS' gross revenues. The complaint alleges that defendants knew the representations were false and made them with intent to deceive and defraud Brignoli. Defendants argue that these claims are nothing more than breach of contract claims, and should be dismissed.

The New York Court of Appeals has addressed this issue in a case very similar to the case at bar. In *Brick v. Cohn-Hall-Marx Co.*, 276 N.Y. 259, 11 N.E.2d 902 (1937), the plaintiff alleged that defendant breached a contract to pay royalties on a package for marketing cloth and that defendant falsely and fraudulently represented to the plaintiff that it had paid all that was due under the contract and had accounted for all sales of the article. The court held that the fraud claim was essentially one in contract because the defendant's liability depended on the contract, and that the action was therefore precluded under the statute of limitations. *See also Miller v. Columbia Records*, 70 A.D.2d 517, 415 N.Y.S.2d 869 (1st Dep't 1979) (citing *Brick* in dismissing a claim of fraud as redundant with respect to breach of contract claim); *Miller v. Volk & Huxley, Inc.*, 44 A.D.2d 810, 355 N.Y.S.2d 605 (1st Dep't 1974) (dismissing second cause of action in fraud as being redundant of contract claim).

■ The opinion in *Brick* is controlling here. Brignoli alleges nothing more than that BHS intentionally and falsely represented that it was abiding by the alleged contract. This alleged fraud is "no more or less a breach of the contract than if the defendant had deliberately refused to pay or had neglected to pay." *Brick*, 276 N.Y. at 264, 11 N.E.2d 902. Accordingly, the Third Claim is dismissed.

Brignoli's Fourth Claim alleges that BHS "craftily" drafted the November 14, 1978 Agreement in a manner designed to frustrate its enforcement, including deliberately omitting the compensation term and planning to raise defenses of statute of frauds and parol evidence rule. It further alleges that the defendant planned not to abide by the agreement and induced the plaintiff by representations to enter into a contract.

Even taking at face value the imaginative claim that a layman drafted a document to enable him to raise technical legal defenses at a later date, this claim is in essence nothing more than an argument that the defendant never intended to fulfill his side of the alleged bargain. Although one who makes a contractual promise with the undisclosed intention to breach it can be held liable for fraud, proof of such intention must be based on more than a showing of nonperformance. *Soper v. Simmons Co.*, 632 F.Supp. 244, 249 (S.D.N.Y.1986). Brignoli's allegations that BHS deliberately omitted from the Agreement compensation to be paid to him and crafted the document to frustrate the possible enforcement of plaintiff's claims, constitute more than a mere showing of nonperformance. Therefore, the motion to dismiss the Fourth Claim is denied.

## Unfair Competition

The Sixth Claim alleges that defendant BHS knowingly induced two employees and a consultant of BMI, a corporation of which Brignoli is the controlling shareholder, to disclose certain confidential information that BHS knew they had agreed not to disclose to others. The amended complaint further alleges that BHS is using this information to "compete unfairly with plaintiff and to appropriate wrongfully the fruits of plaintiff's labors."

Defendants attack this claim on the basis that the only confidential relationship was between the employees and consultant and BMI—not Brignoli. While it is true that a corporation is an entity distinct from its individual shareholders, *see* 13 N.Y.Jur.2d, Business Relationships, § 25, and that Brignoli as an individual has no standing to sue on the corporation's behalf, the amended complaint alleges that the two employees and consultant who had been given access to confidential information of BMI and of Brignoli "were under a duty and had agreed not to disclose or use confidential and proprietary information or trade secrets." Amended Complaint ¶ 52. Liberally construed, this allegation can be read to say that the three had agreed with Brignoli not to disclose certain information. While defendants attempt to refute this claim with the affidavit of William Balch, which alleges that there was no agreement not to disclose, at this time Brignoli's allegation must be taken as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). Therefore, the motion to dismiss the sixth claim is denied.

In his Seventh Claim, Brignoli alleges that BHS competed unfairly with Brignoli and disparaged his products by telling clients that it was using plaintiff's computer programs when it actually was not, by telling clients that it was not using Brignoli's programs when it actually was, and stating to clients that the computer programs used by defendants were "better" than plaintiff's programs.

In order to state a claim for unfair competition based on disparagement, Brignoli must allege some injurious falsehood intentionally uttered that caused the plaintiff to suffer actual damage. *See Diehl & Sons, Inc. v. International Harvester Co.*, 445 F.Supp. 282, 291–92 (E.D.N.Y.1978) (citing *Penn-Ohio Steel Corp. v. Allis-Chalmers Mfg. Co.*, 7 A.D.2d 441, 184 N.Y.S.2d 58, 61 (1st Dep't 1959)). Disparagement is defined as "matter which is intended by its publisher to be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property ... or upon their quality." *Payrolls & Tabulating, Inc. v. Sperry Rand Corp.*, 22 A.D.2d 595, 597, 257 N.Y.S.2d 884 (1st Dep't 1965) (quoting Restatement (Second) of Torts § 629). Generally a statement is actionable only where it is made intentionally to a third person and results in direct financial loss to the party whose interest is disparaged. *See id.* (citing Restatement (Second) of Torts § 630 *et seq.*).

The statements made to BHS's clients that BHS was using Brignoli's programs when it was not and vice versa, are as a matter of law insufficient to constitute

sufficiently damaging falsehoods. Furthermore, Brignoli has failed to plead the requisite special damages. *See Julie Research Laboratories, Inc. v. General Resistance, Inc.*, 25 A.D.2d 634, 268 N.Y.S.2d 187 (1st Dep't 1966), *aff'd*, 19 N.Y.2d 906, 281 N.Y.S.2d 96, 227 N.E.2d 892 (1967); *cf. Payrolls & Tabulating, Inc. v. Sperry Rand Corp.*, 22 A.D.2d 595, 598, 257 N.Y.S.2d 884 (1st Dep't 1965) ("If the special damage was a loss of customers ... the persons who ceased to be customers, or who refused to purchase, must be named.")

The statement that defendant's programs were "better" than those of plaintiff also fails to support a claim of disparagement. A claim in general terms of superiority of one's product over that of a competitor is mere "puffing" and is not actionable. *Julie Research Laboratories, Inc. v. General Resistance, Inc.*, 25 A.D.2d 634, 268 N.Y.S.2d 187 (1st Dep't 1966), *aff'd*, 19 N.Y.2d 906, 281 N.Y.S.2d 96, 227 N.E.2d 892 (1967). "Mere general statements of comparison, declaring that the defendant's goods are the best on the market, or are better than plaintiff's are privileged so long as they contain no specific assertions of unfavorable facts reflecting upon the rival product." *Id.* at 634–35, 268 N.Y.S.2d 187 (quoting Prosser, Torts at 949 (3d ed.)). Therefore, Brignoli has failed to state a cause of action in disparagement.

Although Brignoli has improperly pleaded two possible causes of action in his Seventh Claim, this court does read the Seventh Claim as stating a cause of action in unfair competition. "The basic principle of the law of unfair competition is that no one has the right to represent his goods in such a manner as to deceive an intending purchaser into believing that he is buying the goods of another." *McGraw-Hill Book Co. v. Random House, Inc.*, 32 Misc.2d 704, 225 N.Y.S.2d 646, 653 (Sup.Ct.1962); *see Neva-Wet Corp. v. Never Wet Processing Corp.*, 277 N.Y. 163, 13 N.E.2d 755 (1938). Brignoli's claim that BHS led its clients falsely to believe that the programs it used belonged to Brignoli thus states a claim for relief.

Brignoli's eighth and last claim alleges that defendants Scheinman and Hardy knew of the alleged wrongdoing documented in the Third and Sixth Counts, and received substantial sums of money and assets from BHS, which they knew were derived from the misappropriation of Brignoli's property, unfair competition and disparagement of Brignoli's products. Clearly these claims are dependent upon the demonstration of wrongdoing by the corporate defendant; thus, any cause of action based on the Third, Fifth and Seventh Claims must fail.

The question remains whether knowledgeable individual defendants are liable for the wrongdoing of a corporation of whom they are the principal shareholders, including breach of contract, unfair competition and wrongful appropriation. It is well-settled that absent allegations of active participation, corporate officers and shareholders are not liable for the torts of the corporation. *See* 14 N.Y.Jur.2d, Business Relationships, § 728; 15 N.Y.Jur.2d, Business Relationships § 1079; *Admiral Corp. v. Cohen*, 68 Misc.2d 687, 327 N.Y.S.2d 422, 424 (Sup.Ct.1971). Similarly, officers or agents of a corporation are not personally liable on its contracts if they do not purport to bind themselves individually. 15 N.Y.Jur.2d, Business Relationships § 1023 and cases cited therein. Since such allegations are not present in Counts One, Two, and Six, this claim must also fail.

Therefore, the motion to dismiss is granted for Claims Three, Five and Seven and denied for Claims One, Two, Four and Six. In view of the remaining viability of four of the eight claims, sanctions are not appropriate in this case.

IT IS SO ORDERED.