**Yoko Ono LENNON, Plaintiff,**

v.

**Frederic SEAMAN, Defendant.**

No. 99 Civ. 2664 (LBS).

United States District Court,
S.D. New York.

Sept. 8, 1999.

Paul V. LiCalsi, Gold, Farrell & Marks, New York City, for plaintiff.

Moira Crouch, New York City, for defendant.

*OPINION*

SAND, District Judge.

The plaintiff, Yoko Ono Lennon, brings this action against the defendant, Frederic Seaman, for copyright infringement, declaratory judgment, fraud on the copyright office, recovery of chattels, "trespass,"[1] tortious interference with contract, prima facie tort, unjust enrichment, breach of contract, as well as for injunctive relief. Presently before the Court is the defendant's motion to a) dismiss various claims in the complaint for failure to state a claim upon which relief may be granted due to i) statute of limitations; ii) laches; iii) preemption of state law claims by the Copyright Act of 1976, § 101 *et seq.* ("the Copyright Act"); and iv) failure to state an essential element; b) to dismiss the complaint for failure to comply with service requirements; c) to dismiss the state law claims for lack of subject matter jurisdiction; d) to dismiss the complaint due to failure to comply with Fed.R.Civ.P. 8(a); e) to strike matters from the complaint; and f) for an award of fees and costs. All of the defendant's motions are denied, except as follows: the plaintiff's claims for tortious interference with contract and prima facie tort are dismissed; the plaintiff's claims for recovery of chattels and "trespass," are dismissed to the extent that these claims relate to the photographs contained in the book *The Last Days of John Lennon: A Personal Memoir* by Frederic Seaman (Carol Publishing Group, 1991) ("*The Last Days of John Lennon*"); and the plaintiff's unjust enrichment cause of action is dismissed because it is preempted by federal copyright law. Furthermore, the plaintiff is instructed to submit briefing to the Court relating to the issue of copyright registration, as described below; and the parties are instructed to submit briefing on the issue of ripeness in relation to the fraud on the Copyright Office claim. All papers should be submitted to the Court within sixty days from the date of this Opinion.

## BACKGROUND

The plaintiff is the widow of the late John Lennon. In the late 1970s and early 1980s the defendant was an employee of the Lennon household. At the center of this dispute lie various photographs and other depictions of the Lennons, presumably taken by the defendant, that were created during the defendant's employment. The plaintiff contends that she is the owner of the copyrights to the items pursuant to the work-for-hire doctrine, as well the owner of the actual photographs themselves. The defendant, on the other hand, claims that he owns the items and the copyright to those items. Out of this difference of opinion arise thirteen causes of action.

The complaint alleges that the defendant unlawfully removed photographs, videotapes and other depictions of the Lennons from the Lennon household from December of 1980 to December of 1981. The plaintiff seeks the return of these items, and damages for "trespass."

The plaintiff also claims that the defendant infringed her copyright in many of the photographs through his unauthorized publication of the items by, among other allegations, appearing and showing the photographs on the Fox Family Channel special entitled "Famous Families: the Kennedys and the Lennons" in February 1999, and on Court TV's program, "Pro and Con," in May 1999. The plaintiff seeks a declaratory judgment that she is and has always been the rightful owner of the photographs, as well as injunctive relief. She also asserts that the defendant has been unjustly enriched by virtue of his exploitation of the photographs.

Recently, the plaintiff entered into a contract with Capitol Records, Inc. ("Capi-

---

1. As is discussed below, the plaintiff's claim entitled "trespass" is in reality a claim for conversion.

tol") to release a box set of Mr. Lennon's previously released and unreleased works. The box set was accompanied by a booklet containing, among other items, photographs of Mr. Lennon. One of these photographs was a picture of Lennon and one of his sons overlooking a beach. The plaintiff contends that the defendant tortiously interfered with her contract with Capitol when he sent a letter to Capitol claiming that he owned the copyright in the photograph. This alleged action by the defendant is also the basis of the plaintiff's prima facie tort claim. Further, the plaintiff asserts a claim for fraud on the Copyright Office relating to the defendant's filing of an application of registration with the United States Copyright Office for the aforementioned photograph used in the box set.

As a condition of the defendant's employment with the Lennons, he purportedly signed a contract ("Confidentiality Agreement") whereby he agreed "not to divulge, exploit, commercially or otherwise, or publicize, in any manner whatsoever, any information, facts, or anecdotes or otherwise relating to [the Lennons] in any manner" without prior written permission from the Lennons. (Second Amend. Compl. at ¶ 5, quoting Confidentiality Agreement.) The plaintiff contends that the defendant has breached this contract by disclosing information about the Lennons through his dissemination of the photographs and other confidential information to others. She seeks both damages and injunctive relief in regards to the defendant's ongoing breach of the Confidentiality Agreement.

On this motion to dismiss, the defendant argues that the plaintiff is barred by laches as well as the statue of limitations from asserting her various claims. In response, the plaintiff contends that the defendant is equitably estopped from asserting both the defense of laches and the statute of limita-

tions as a result of the defendant's prior behavior. In particular, the plaintiff claims that the defendant's representation that he had complied with his obligations under a plea agreement—which arose in connection with the defendant's conviction for larceny of Mr. Lennon's journals—to return all items wrongfully taken from the Lennon household, even though he had not, constitutes fraudulent concealment and makes the asserted defenses by the defendant inapplicable.

The defendant also contends that the plaintiff's causes of action pursuant to state law are preempted by the Copyright Act, and that various claims should be dismissed for failure to state an essential element of those claims. The defendant also moves to dismiss the complaint for failure to comply with Fed.R.Civ.P. 8(a); to strike portions of the complaint; to dismiss for lack of proper service; to dismiss for lack of subject matter jurisdiction, assuming the copyright claims are dismissed, and for an award of fees and costs

## DISCUSSION

■ As a preliminary matter, we note that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. Registration of copyright is a jurisdictional prerequisite for infringement actions. 17 U.S.C. § 411(a). This requirement can be met by filing an application for registration. *See* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a], n. 39. The plaintiff alleges that she has been issued copyright registration in the 42 photographs appearing in *The Last Days of John Lennon,* and that she had filed with the Copyright Office an application and fee for registration of the 332 other photographs for which she is suing for infringement.[2] (*See* Second Amend.Compl. at ¶ 26). The Court does note, however, that some of the plaintiff's copyright claims mention not only the

---

**2.** Hereinafter these 42 and 332 photographs are collectively referred to as the "Photo-

graphs."

aforementioned Photographs, but also other photographs, videotapes and other depictions of the Lennons. No allegation is made that registration of the copyright in these items has been issued or that an application is pending. For these reasons, the Court directs the plaintiff to submit briefing to the Court within sixty days from the date of this Opinion, indicating either that the plaintiff is relying on an exception to the registration requirement, or that the plaintiff has sought to register copyright in these materials. For the aforementioned reasons, the Court's Opinion today does not address the portion of the plaintiff's copyright claims relating to the other photographs, videotapes or other depictions of the Lennons.

### I. Motion to Dismiss Relating to Service

■ The defendant moves to dismiss the second amended complaint for reasons related to service. The Court's best assessment of the defendant's motion is that the defendant seeks to dismiss the action because the plaintiff failed to file the Affidavit of Service of the original summons and complaint at the time the plaintiff filed those documents. The plaintiff states that the Affidavit of Service was inadvertently omitted when the papers were filed with the Court on April 16, 1999, but that the Affidavit was filed the next business day. A review of the Court file indicates that such an Affidavit of Service was so filed with the Court on April 19, 1999. The Court also notes that a failure to make proof of service does not affect the validity of the service. *See* Fed.R.Civ.P. 4(1). Accordingly, this portion of the defendant's motion is denied.

### II. Motion to Dismiss for Failure to State an Essential Element

The defendant asserts that the plaintiff has failed to state the essential elements of the following claims: tortious interference with contract; prima facie tort; and unjust enrichment. The plaintiff disputes this assertion.

■ The plaintiff's ninth claim alleges that the defendant tortiously interfered with her contract with Capitol to release the box set. The defendant argues that the claim has failed to state the essential element of an actual breach. Under New York law, the elements of a claim for tortious interference with contractual relations are: i) the existence of a valid contract between the plaintiff and a third party; ii) defendant's knowledge of the contract; iii) defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible; and iv) damages to the plaintiff. *See Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 612 N.E.2d 289, 595 N.Y.S.2d 931 (N.Y.1993). The Court of Appeals has explicitly stated that this cause of action requires an actual breach. *See NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 620, 664 N.E.2d 492, 641 N.Y.S.2d 581 (N.Y.1996); *see also D'Andrea v. Rafla–Demetrious*, 146 F.3d 63, 65–66 (2d Cir.1998).

The plaintiff, however, contends that where there is no breach, a plaintiff can still maintain a cause of action for tortious interference with contract by alleging "culpable conduct" or "wrongful means" on the part of the defendant. Plaintiff then cites to *NBT* and *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191, 406 N.E.2d 445, 428 N.Y.S.2d 628 (N.Y. 1980) for support of this proposition. The plaintiff has merged two causes of action—tortious interference with contract and tortious interference with prospective contract or business relations. The former requires an allegation of an actual breach, and the latter requires a showing of "wrongful means." *See NBT*, 87 N.Y.2d at 620–24, 664 N.E.2d 492, 641 N.Y.S.2d 581; *Guard–Life*, 50 N.Y.2d at 190–92, 406 N.E.2d 445, 428 N.Y.S.2d 628.

■ The plaintiff has alleged tortious interference with an existing contract, rather than a prospective contract. Lacking an actual breach, the plaintiff attempts

to fill the void with allegations of "wrongful means," a requirement under causes of action relating to interference with prospective contracts. In light of both the Court of Appeals' clear statement that tortious interference with contract requires a showing of actual breach, and the Second Circuit's demonstrated reluctance to find that New York courts would recognize exceptions to the rule requiring "actual breach," *see D'Andrea,* 146 F.3d at 66, we decline to hold that an allegation of "wrongful means" can substitute for an allegation of actual breach in a claim for tortious interference with an existing contract claim. Thus, plaintiff's ninth cause of action is dismissed.

The defendant moves to dismiss the plaintiff's tenth claim, prima facie tort, on the theory that the plaintiff has failed to state a necessary element. In particular, the defendant argues that although the plaintiff alleges that the defendant acted without legal or social justification, the defendant did have such justification, and that the defendant did not seek to injure the plaintiff, but merely to protect his own interests. The plaintiff, not surprisingly, has a different viewpoint. On a motion to dismiss for failure to state a necessary element, the defendant's contention that he only acted to protect his own interests is not sufficient to require dismissal.

Nevertheless, plaintiff's claim does lack an essential element. Under New York law, the elements of a prima facie tort claim are intentional infliction of harm, resulting in special damages, without excuse or justification, by an act that would otherwise be lawful. *See, e.g., Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 451 N.E.2d 459 (N.Y.1983). Furthermore, the plaintiff must allege that the defendant's sole motivation was disinterested malevolence. *See Lindner,* 59 N.Y.2d at 333, 464 N.Y.S.2d 712, 451 N.E.2d 459. It is on this last element that the plaintiff's claim fails. Not only did the plaintiff fail to allege that the defendant

was motivated solely by malice, but by incorporating paragraphs 1–36 of the complaint in the claim, the plaintiff has actually alleged that the defendant's motivations behind the theft and use of Lennon's items were monetary in nature. When there are other motives, such as profit or self-interest, behind the alleged actions, there will be no recovery under the theory of prima facie tort. *Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 (2d Cir.1985) (interpreting New York law); *Lindner,* 59 N.Y.2d at 333, 464 N.Y.S.2d at 720. *See also Idaho Potato Comm'n v. M & M Produce Farms and Sales,* 35 F.Supp.2d 313, 324 (S.D.N.Y. 1999) (dismissing sua sponte plaintiff's prima facie tort claim for failure to allege disinterested malevolence, and for essentially pleading other motives in paragraphs that were re-alleged in the prima facie tort claim). Therefore, we dismiss plaintiff's prima facie tort claim.

We do not reach the defendant's claim that the unjust enrichment cause of action lacks an essential element because, as described below, we find the unjust enrichment claim to be preempted by federal copyright law.

### III. Preemption

The defendant moves to dismiss the plaintiff's seventh through thirteenth causes of action on the theory that these state law claims are preempted by the Copyright Act. The plaintiff argues that the state law claims are all independent of the Copyright Act.

When Congress amended the Copyright Act in 1976, it included a provision that provided for preemption of state law claims in certain situations. *See* 17 U.S.C. § 301. The relevant portion of the statute reads as follows:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium

of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or ...

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301.

■ Thus, a court analyzing whether a state claim is preempted by federal copyright law must engage in a two-part inquiry. The Court must determine if the state law creates rights that are equivalent to the rights protected by federal copyright law under 17 U.S.C. § 106. *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir.1997). This has been referred to as the "general scope" requirement. *See id.* If the state law claim requires an extra element "'instead of or in addition to the acts of reproduction, performance, distribution or display ... then the right does not lie within the general scope of copyright, and there is no preemption.'" *Computer Assocs. Int'l. Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (quoting 1 Nimmer, § 1.01[B]) (internal quotation omitted). The extra element must, however, alter the nature of the claim such that it is qualitatively differ-

ent from a claim pursuant to the federal copyright laws. *See id.; Harper & Row, Publishers, Inc. v. Nation Enter.*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985). The Court must also inquire whether the work in which rights are being asserted falls within the type of works protected by the Copyright Act under §§ 102 and 103. *See Nat'l Basketball Ass'n*, 105 F.3d at 848. This has been referred to as the "subject matter requirement." *See id.*

### A. Claims Seven and Eight—Recovery of Chattels and Trespass

■ Plaintiff's seventh and eighth claims are entitled "Recovery of Chattels" and "Trespass," The defendant argues that these claims are preempted, while the plaintiff contends that the claims are not preempted because they relate to the tangible Photographs, other photographs, videotapes, and depictions of the Lennons that the defendant allegedly possesses, rather than the copyright in those works.

Thus, the issue in dispute is whether the "general scope" requirement is met. It is clear that if the gravamen of plaintiff's claims were the unauthorized publication of the items, then the right the plaintiff would be seeking to enforce would be "coextensive with an exclusive right already safeguarded by the Act—namely, control over reproduction of and derivative use of copyrighted material," and the claim would be preempted. *Harper & Row, Publishers, Inc. v. Nation Enter.*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). Plaintiff's seventh and eighth claims, however, relate not to intangible copyright ownership but rather to ownership rights in, and possession of, the tangible items themselves.[3]

---

**3.** The defendant argues that because paragraph 50 of the plaintiff's complaint, relating

to one of the plaintiff's copyright claims, is similar to paragraphs 77 and 86, which relate

Where a state law claim is based on interference with tangible property rather than the intangible copyrights, the claim is not the equivalent of rights protected by the copyright laws. *See* 1 Nimmer § 1.01[B][1][i] ("[t]he torts of conversion and trespass relate to interference with tangible rather than intangible property, and hence should be held immune from preemption."). *See also Boyle v. Stephens, Inc.*, No. 97 Civ. 1351(SAS), 1998 WL 690816 *7 (S.D.N.Y. Sept.29, 1998); *Ronald Litoff, Ltd. v. Am. Express Co.*, 621 F.Supp. 981, 986 (S.D.N.Y.1985); *Mayer v. Josiah Wedgwood & Sons*, 601 F.Supp. 1523, 1533 (S.D.N.Y.1985); *Uncle Jam Records & Tapes Intern'l, Inc. v. Warner Bros. Records, Inc.*, No. 81 Civ. 5437(PNL), 1983 WL 1144 *1–*2 (S.D.N.Y. Sept.22, 1983); *but see Van Brunt v. Rauschenberg*, 799 F.Supp. 1467, 1473 (S.D.N.Y.1992) (noting, in dicta, that there is some suggestion that the work-for-hire doctrine of the federal copyright law may preempt claims for conversion and replevin.) Thus, plaintiff's seventh and eighth claims are not preempted to the extent these claims relate to the tangible items at issue, and not the copyright in those items.

### B. Claim Eleven—Unjust Enrichment

◼ In her eleventh claim, the plaintiff alleges that the defendant has been and may continue to be unjustly enriched by his exploitation of the Photographs and by his claim of ownership in those Photographs.

The first step in the two-step inquiry is whether the state law rights on which the plaintiff is suing are equivalent to the rights protected by federal copyright law. *See Altai*, 982 F.2d at 716. Courts have generally held that the unjust enrichment

theory creates rights that are essentially equivalent to those created under federal copyright law. *See Boyle*, at *6 (listing cases); *see also* 1 Nimmer § 1.01[b][1][g]. Here, it is clear from the complaint that the gravamen of the plaintiff's unjust enrichment claim is unauthorized publication, and that the unjust enrichment claim does not involve rights "different in kind" from those protected by federal copyright law. (*See* Second Amend.Compl. at ¶ 108, stating "defendant has realized and may continue to realize substantial sums of money from his exploitation of the Photographs, and by his claim of copyright ownership of those Photographs.") Furthermore, the works in question, the Photographs, clearly fall within the works protected by the Copyright Act. Therefore, the "subject matter" requirement is met. For these reasons, the unjust enrichment claim is dismissed because it is preempted by the federal copyright law.

### C. Claim Twelve—Breach of Contract

◼ The plaintiff alleges that the defendant signed a contract ("Confidentiality Agreement") whereby he agreed "not to divulge, exploit, commercially or otherwise, or publicize, in any manner whatsoever, any information, facts, or anecdotes or otherwise relating to [the Lennons] in any manner" without prior written permission from the Lennons. (*See* Second Amend. Compl. at ¶ 5, quoting Confidentiality Agreement.) The plaintiff's twelfth claim alleges that the defendant has breached this contract during the past six years, through public dissemination of the Photographs, other material, and private information regarding the Lennons. The thirteenth claim seeks to enjoin the defendant from disseminating this information any

---

to the claims for return of chattels and "trespass," the state claims are preempted. The differences in these two paragraphs, however, illustrate why the claims of return of chattels and trespass are not causes of action seeking enforcement of copyrights. For example, paragraph 50 reads in relevant part: "[a]t all relevant times, plaintiff is, and always has

been the rightful owner of the copyrights to the Photographs ...," (*see* Second Amend. Compl at ¶ 50), whereas paragraph 77 reads in relevant part: "[a]t all times herein plaintiff was and is the rightful owner of all works made or created by Seaman during his employ ...," (*see id.* at ¶ 77.)

further. The defendant argues that these two claims are preempted by federal copyright law. We disagree.

At the outset, the Court notes that while there is not consensus among courts and commentators on whether breach of contract claims should be preempted by § 301, the greater weight of the authority indicates that breach of contract actions are generally found not to be preempted by the Copyright Act. *See, e.g., ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1453–55 (7th Cir.1996) (holding that the state law breach of contract claim based on shrinkwrap license was not preempted and stating that "a simple two-party contract is not" equivalent to the exclusive rights created by copyright law and may therefore be enforced); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 433 (8th Cir.1993) (holding that breach of contract claim was not preempted because agreement between the parties created a restriction, relating to the processing of data to third parties, that would not otherwise exist); *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir.1990) (affirming district court's holding that the enforcement of the contract in question was not preempted since the rights created under the contract were not equivalent to the exclusive rights under the copyright laws); *Acorn Structures, Inc. v. Swantz,* 846 F.2d 923, 926 (4th Cir.1988) (reversing district court's holding that breach of contract claim was preempted); *Katz Dochrermann & Epstein, Inc. v. Home Box Office,* No. 97 Civ 7763(TPG), 1999 WL 179603 *4 (S.D.N.Y. March 31, 1999) (holding that the implied-in-fact contract claim was not preempted because the claim sought to enforce a promise to pay for use of plaintiff's ideas, regardless of any subsequent rights plaintiff may have acquired under the Copyright Act); *Architectronics, Inc. v. Control Syst. Inc.,* 935 F.Supp. 425, 438–41 (S.D.N.Y.1996) (holding that contract claim was not preempted because the contract claim contained the extra element of a promise by the defendant); *Brignoli v. Balch Hardy and Scheinman, Inc.,* 645 F.Supp. 1201, 1204–06 (S.D.N.Y.1986) (holding that plaintiff's breach of contract claims, including a breach of confidentiality agreement, were not preempted because they involved "extra elements"); *Smith v. Weinstein,* 578 F.Supp. 1297, 1307–08 (S.D.N.Y.1984) (holding that, while any claim that rested not on the actual breach of the contract but rather on unauthorized copying was preempted, the breach of contract claims focusing on rights such as confidentiality and payment for ideas were not preempted); *see also* 1 Nimmer § 1.01[B][1][a]; *but see Arpaia v. Anheuser–Busch Cos., Inc.,* 55 F.Supp.2d 151 (W.D.N.Y. 1999) (holding that the plaintiff's claim of breach of implied contract was preempted where the complaint stated that the claim was based on the defendant's alleged use of the copyrighted works); *American Movie Classics Co. v. Turner Entertainment Co.,* 922 F.Supp. 926 (S.D.N.Y.1996) (holding that breach of contract claim was preempted where the express contract governed rights equivalent to those under the Copyright Act); *Wolff v. Inst. of Elec. and Elecs. Eng'rs., Inc.,* 768 F.Supp. 66, 69 (S.D.N.Y.1991) (holding that the breach of contract claim was preempted where the alleged breach was an infringement of plaintiff's copyright).

While many courts have held certain contract claims not to be preempted by federal copyright law, it is important to note that not all of these holdings are based on the same principles. For example, some cases, such as *Architectronics,* appear to stand for the broad proposition that it is the promise inherent in contract arrangements that is the "extra element" that saves contract claims from preemption. Under this theory, "a breach of contract claim is not preempted even if the contract involves the rights granted to copyright owners under the Copyright Act" because, unlike claims for copyright infringement, claims based on a contract will involve the extra element of a promise by one party to another. *Architectronics,*

935 F.Supp. at 439 (interpreting and endorsing the principle expressed in *Brignoli*, 645 F.Supp. at 1205). Other holdings are more narrow. For example, in *Nat'l Car*, the court explicitly avoided deciding the broader issue, and rested its holding on the determination that the contract right in question was not equivalent to any of the exclusive copyright rights. *See Nat'l Car*, 991 F.2d at 434, n. 6.

This Court as well finds that it is not necessary to determine whether a claim based on a contract between the parties that encompasses solely the exclusive rights under copyright law would be preempted. Instead, we find that the claim is not preempted because it involves rights that are not the equivalent of those under the copyright laws.

By signing the agreement in question,[4] the defendant, in sum, consented that, as a condition of his employment, he would not disclose information about the Lennons to others without prior written permission. The contract therefore creates a right that the plaintiff not have information about the Lennons divulged to the public by the defendant, who was in her employ. Thus, we read the breach of contract claim to be seeking to enforce the plaintiff's bargained-for right not to have certain information disclosed to others, rather than, as the copyright law provides, to enforce an exclusive right to reproduce, distribute and display certain works.[5] As such, the contract claim seeks to enforce rights that are qualitatively different from those created by the federal copyright laws.

**4.** The Court is aware that the defendant claims that he did not sign the contract. Nevertheless, for the purposes of this motion, we must construe the allegations in the complaint in the plaintiff's favor.

**5.** A purely hypothetical scenario may better illustrate the point. If the plaintiff alleged that the defendant had confiscated an article that she had written about life in the Lennon home, and had published that article, the plaintiff then might have had a copyright infringement claim for publication of the article

We also note that the gravamen of plaintiff's breach of contract is the breach of a contractual duty of confidentiality, which has been held to qualitatively distinguish such a claim from a claim of copyright infringement. *See Brignoli*, 645 F.Supp. at 1205 (holding that a breach of an agreement of confidentiality is not equivalent to a copyright claim for preemption purposes.); *see also Computer Assoc. Int'l. Inc. v. Altai*, 982 F.2d 693, 717 (2d Cir. 1992) (stating that a breach of duty of confidentiality "supplies the 'extra element' that qualitatively distinguishes trade secret causes of actions from claims for copyright infringement"); *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1536 (S.D.N.Y.1985) (stating in dicta that a breach of confidentiality claim is possibly not equivalent to a copyright claim). Finally, the Court notes that the contract in question seeks to limit the defendant's disclosure of materials, such as "facts," that do not fall within the subject matter of the copyright laws.

Thus, because the breach of contract claim seeks to enforce rights that are qualitatively different than those created under the copyright laws, it is not preempted. Furthermore, because we find that the breach of contract claim is itself not preempted by federal copyright law, we also find that the plaintiff's thirteenth claim seeking to enjoin the defendant from further breaching the Confidentiality Agreement is similarly not preempted.

### IV. The Defense of Laches

The defendant asserts the defense of laches in his motion to dismiss

against the defendant, and also a breach of contract claim for disclosure of the information contained in the article about the Lennons. The two rights are separate. One concerns the exclusive right to reproduce and display the work, while the other concerns the contractual right not to have the information in the work divulged to any other individual. The question of whether the Photographs and other material do actually constitute divulgences of information about the Lennon family is, of course, an issue for another day.

counts one through eleven. The defense of laches is an affirmative defense, which is generally not appropriately raised in a motion to dismiss. *See, e.g., Karlen v. New York Univ.,* 464 F.Supp. 704, 708 (S.D.N.Y. 1979). However, in certain circumstances, when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss. *See, e.g., Oshiver v. Levin Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385, n. 1 (3rd Cir.1994); 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 2d, § 1357.

 This is not such a case, however. As the Court noted to the parties at oral argument, in the instant action, a ruling on the defendant's defense of laches would necessarily involve a fact-intensive analysis and balancing of equities that would require the Court to consider matters outside of the pleadings that are in dispute. For example, the plaintiff argues that the defendant's fraudulent concealment of the material at issue bars the defendant from asserting a defense of laches since such a defense is often unavailable to those who have "unclean" hands. The defendant, on the other hand, denies fraudulently concealing the Photographs, and the other material at issue. The instant action is so replete with allegations from both sides, many of which would bear on the applicability of the defense of laches if found to be accurate, that the defendant's assertion of laches is inappropriate for adjudication at this stage of the litigation. Therefore, the defendant's motion is denied.

## V. Defendant's Motion to Dismiss Based on the Statutes of Limitations

### A. Legal Standard

The defendant asserts that claims three through eight, twelve and thirteen are barred by the relevant statute of limitations. "While a statute-of-limitations de-fense may be raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), such a motion should not be granted unless 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989) (quoting *Abdul–Alim Amin v. Universal Life Ins. Co.,* 706 F.2d 638, 640 (5th Cir. 1983) (internal quotation omitted) (citation omitted)). In reviewing such a motion, the Court "must accept plaintiff's allegations at face value, [and] construe the allegations in the complaint in plaintiff's favor." *Rapf v. Suffolk County,* 755 F.2d 282, 290 (2d Cir.1985) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *Heit v. Weitzen,* 402 F.2d 909, 913 (2d Cir.1968)). Also, to the extent that the Court considers issues outside the pleadings, the motion to dismiss shall be treated as a motion for summary judgment. *See Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir.1999).

### B. Recovery of Chattels and "Trespass"

 The plaintiff's seventh and eighth causes of action, entitled "recovery of chattels" and "trespass," respectively, relate to the defendant's alleged removal of certain materials from the Lennons' apartment in the early eighties. The defendant claims that the statute of limitations on these claims ran numerous years ago.

The statute of limitation in New York for "recovery of chattels" is three years. *See* N.Y.C.P.L.R. § 214(3). When the claim is brought against the alleged "thief" of the goods, the statute "'runs from the time of the theft ... even if the property owner was unaware of the theft at the time that it occurred.'" *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 187 n. 5 (2d Cir. 1999) (pagination unavailable) (quoting *Solomon R. Guggenheim Found. v. Lubell,* 77 N.Y.2d 311, 567 N.Y.S.2d 623, 626, 569 N.E.2d 426 (1991)).[6] The thefts allegedly

---

**6.** An action for recovery of chattels against a good-faith purchaser of the goods, on the

occurred at the latest in December of 1981. Thus, unless the plaintiff can demonstrate a reason why the statute of limitations should be tolled for a period of time or not apply in the instant case, the recovery of chattels claim is time-barred.

The statute of limitations applicable to the plaintiff's eighth claim, entitled "trespass," requires a review of the essence of the plaintiff's assertions. Although the claim bears the title of trespass, in analyzing a statute of limitations argument, we must look beyond the title to the true substance of the claim. *See Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 19 (2d Cir.1983). "Interference with a person's property constitutes trespass, while a denial or violation of the plaintiff's dominion, rights, or possession, is the basis of an action for conversion." *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 487, 448 N.E.2d 1324, 462 N.Y.S.2d 413 (N.Y.1983) (internal citations and quotations omitted). Thus, the Court must determine whether the alleged conduct amounts to an interference with the property, or, rather, constitutes a denial of plaintiff's rights to, or possession in, the property. We find that the alleged conduct constitutes conversion.

 The plaintiff claims that the defendant, without authorization, took the materials in question from the Lennons' apartment between December 1980 and December 1981, and refuses to return them. (*See* Second Amend. Compl. at ¶ 87.) Such taking, particularly for a prolonged period of time, is not merely an interference with property rights, but rather, a denial of the plaintiff's dominion and possession of the property. The plaintiff's possessory rights have allegedly been completely usurped, not merely interfered with, by the defendant's actions for over seventeen years. Indeed, even the complaint, in the recovery of chattels claim, alleges that the defendant converted the items. (*See* Second Amend. Compl. at

¶ 78.) Thus, the plaintiff's claim is actually one for conversion and not one for trespass.

The distinction between a claim for trespass and a claim for conversion is of particular import in determining whether the claim is time barred. A claim for trespass may be considered a continuing offense, whereby "each day the rightful possessor's use and enjoyment of the chattel is impaired," a new claim accrues. *Weisman v. Rosenker*, No. 84 Civ. 2258, 1985 WL 182 *2 (S.D.N.Y. Jan.10, 1985). The statute of limitations on a claim of conversion, however, begins to accrue at the moment of conversion, regardless of when the conversion is discovered. *See, e.g., Vigilant Ins. Co. of Am. v. Hous. Auth. of the City of El Paso*, 87 N.Y.2d 36, 44, 660 N.E.2d 1121, 637 N.Y.S.2d 342 (N.Y.1995); *see also Sporn*, 58 N.Y.2d at 487, 448 N.E.2d 1324, 462 N.Y.S.2d 413 ("If defendant hits plaintiff's horse repeatedly, plaintiff has a new cause of action upon each striking; but if defendant destroys plaintiff's horse, or takes it and claims it as his own, plaintiff's right accrues immediately and he must sue within the period of limitation measured from that date—or never" (quoting *Sachs v. Cluett Peabody & Co.*, 265 A.D. 497, 501, 39 N.Y.S.2d 853, 857 (1st Dep't 1943)).) The defendant is alleged to have taken and converted the items no later than December 1981. Thus, just as with the recovery of chattels claim, unless the plaintiff can allege a reason why the statute of limitations should be tolled or not apply in the instant case, the claim is time barred.

 The plaintiff, acknowledging that the actions in question occurred numerous years ago, argues that the defendant's fraudulent concealment of the fact that the defendant took the items in question should equitably estop the defendant from asserting the time bar. The plaintiff is correct in asserting that an intentional

---

other hand, does not begin to run until a demand for the property has been made and refused. *See, e.g., Solomon R. Guggenheim Found., v. Lubell*, 77 N.Y.2d 311, 318–19, 569 N.E.2d 426, 567 N.Y.S.2d 623 (1991).

concealment of the misconduct that is relied upon by the plaintiff can equitably estop a defendant from utilizing the defense of statute of limitations. *See. e.g., Simcuski v. Saeli,* 44 N.Y.2d 442, 448–49, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978) ("It is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."). Furthermore, the plaintiff appropriately pleads such concealment in the complaint by alleging that the defendant was under an obligation to return to the plaintiff any property he had "wrongfully taken, obtained or withheld from the Lennons" by virtue of his plea agreement, that he represented that he had complied with the plea agreement even though he had not, and that the plaintiff therefore believed that he had fully complied with the agreement and that he possessed no more items belonging to her.[7] (*See* Second Amend. Compl, ¶¶ 21–24.)

At this stage of the litigation, such pleading of concealment is generally sufficient to survive the motion to dismiss due to the running of the statute of limitations, since we view the pleadings in the light most favorable to the plaintiff. The defendant, however, makes a valid argument in regards to the photographs that were published in the 1991 publication of *The Last Days of John Lennon.*[8] The defendant argues that the plaintiff must have known about the book in 1991, and, therefore, realized that the defendant was in possession of the photographs published in the book. The defendant points to a "cease and desist" letter from the plaintiff's lawyer to the publishers of the book as evidence that the plaintiff knew of the book. (*See* Crouch Aff, Exh. 1.) Furthermore, the 1991 book states "all photos courtesy of Fred Seaman." (*See* LiCalsi Aff. in Opp., Exh. E.)

The Court agrees with the proposition inherent in the defendant's position, which is that the plaintiff cannot rely on the defendant's alleged concealment of his possession of the photographs if she nevertheless was clearly aware that he possessed them as of 1991. Furthermore, where the conduct relied upon for equitable estoppel "ceases to be operational after the expiration of the period of limitations … the preferred analysis … holds that due diligence on the part of the plaintiff in bringing his action is an essential element of the applicability of the doctrine." *Simcuski v. Saeli,* 44 N.Y.2d 442, 450, 377 N.E.2d 713, 406 N.Y.S.2d 259 (1978).

Thus, the first question we must answer is when the plaintiff became aware of the essential facts surrounding her cause of action, or, in other words, when the fraudulent concealment ceased to be operational. The second question that must be addressed is how long the plaintiff delayed in filing her suit after she was aware of all the essential facts relating to her cause of action, and whether that time lag was reasonable. *See id.* Evidence of the plaintiff's knowledge of the book and, therefore, the defendant's possession of the photographs appearing in that book, is compelling. However, this evidence lies outside the four corners of the complaint, and is not properly considered by the Court on a motion to dismiss. *See Amaker,* 179 F.3d at 50. Therefore, we must either deny the motion to dismiss, or convert the motion into one for summary judgment. *See id.*

---

7. We note that the defendant's argument that the plaintiff cannot use as a basis for an equitable estoppel claim the defendant's false representation that he complied with his plea agreement is misplaced. The defendant relies on his position as to the ultimate issue in the case—that he is the rightful owner of the works—to argue that there was no fraudulent concealment and no false representation.

Such an argument, however, is inappropriate at this stage of the litigation.

8. The Court understands that apparently other books by the defendant have been published. Nevertheless, the defendant's argument centers around *The Last Days of John Lennon,* and, therefore, the Court limits its analysis to the pictures contained in that book.

We convert the motion into one for summary judgment. Formal notice to the non-movant is not necessary where, as here, both sides have supplied the Court with matters outside the pleadings in response to the motion. *See. Cantor v. NYP Holdings, Inc.,* 51 F.Supp.2d 309, 310 (S.D.N.Y.1999). This is particularly so where, as here, it is the plaintiff who urges the Court to consider the information at issue. (*See* Pl.'s Mem. of Law in Opp. at 8.)

Summary judgment is proper only if "there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law." *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 619 (2d Cir.1996) (quoting *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991)). While all inferences must be draw in favor of the non-movant, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations and internal quotations omitted).

The plaintiff herself does not contend that she was unaware of the publication of the book. Indeed, she argues that she did not pursue legal remedies in 1991 because she feared bringing greater attention to the book. (*See* Pl.'s Mem. of Law in Opp. at 9.) Embedded in that argument is the acknowledgment that she was aware of the content of the book. In light of the documentary evidence that the plaintiff was aware of the book's publication, the plaintiff's own argument indicating that she knew of the book's publication in 1991, and that the book states "all photos courtesy of Fred Seaman," we determine that there is no dispute of material fact relating to the plaintiff's knowledge that the defendant had the photographs in his control by 1991. We find that no rational jury could find that the publication of the book failed to put the plaintiff on notice that the defen-

dant had control of these photographs. Thus, the latest that the recovery of chattels and conversion claims began to accrue, as they relate to the photographs contained in the book, is 1991.

According to the analysis endorsed in *Simcuski,* the relevant question then becomes whether the plaintiff's delay in bringing the recovery of chattels and conversion claims was reasonable. *See Simcuski,* 44 N.Y.2d at 450–51, 377 N.E.2d 713, 406 N.Y.S.2d 259. The circumstances surrounding the instant case impact on the determination of reasonableness. *See id.* Also, "the length of the legislatively prescribed period of limitations is sometimes said to be relevant, and courts have held that in no event will the plaintiff be found to have exercised the required diligence if [her] action is deferred beyond the date which would be marked by the reapplication of the statutory period." *See id.* In this case, the statute of limitations is three years. The plaintiff knew or should have known that the defendant possessed the photographs in the book no later than the last day in 1991. The three year statute of limitations, therefore, ran at the latest at the end of 1994. Nevertheless, the instant action was not initiated until April of 1999. Furthermore, the plaintiff, who would ultimately bear the burden of showing that the delay was reasonable, only offers as an excuse that she did not wish to bring attention to the defendant's book by seeking legal action. Under these circumstances, we find that, as a matter of law, the plaintiff's delay, is not reasonable. Therefore, the plaintiff's claims for recovery of chattels and conversion are dismissed to the extent they relate to the photographs contained in *The Last Days of John Lennon.*

The question then arises whether the discovery that the defendant possessed some of the plaintiff's property obligated the plaintiff to make inquiries as to what other items may be in the defendant's possession, or in some manner placed her on notice that he had other items from the

Lennons. If, in 1991, she did incur such an obligation to inquire or if she became chargeable with the knowledge that the defendant possessed items other than the photographs appearing in the 1991 book that belonged to her, the plaintiff's claims for recovery of chattels and conversion as they relate to the remaining items listed in the complaint may be untimely as well.

The parties have not briefed this issue, however. Information, such as how the photographs (other than those in the book), the videotapes and other depictions were actually discovered, as well as the nature of these items, and whether they are closely related in kind to the photographs in the book, are all among the issues that may bear on the question of whether the recovery of chattels and conversion claims are timely. For these reasons, the Court declines at this time to grant the defendant's motion to dismiss the claims of recovery of chattels and conversion as they relate to items other than the photographs contained in the 1991 publication. The Court, however, grants the defendant leave to raise the issue at the appropriate time.

### C. Claims Based on the Copyright Act

Plaintiff's third claim is entitled "Copyright infringement" and alleges that the defendant has, in the three years preceding the filing of the instant action, copied, published, displayed and distributed Photographs, other photographs, depictions and videotapes of the Lennon family in violation of 17 U.S.C. §§ 501, 106. The defendant, however, argues that this claim, as well as the fourth and sixth claims, is actually a claim for ownership in the items, rather than a claim for infringement.

■ The applicable statute of limitations under the copyright laws is three years. 17 U.S.C. § 507(b). ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claims accrued.") Generally, a claim begins to accrue when the party asserting the claim knows or should have known of the injury on which the claim is based. See Merchant v. Levy, 92 F.3d 51, 56 (2d Cir.1996). It is well established that in an action for infringement, the claim "accrues at the time that the infringement upon which the suit is based occurred. If such infringement occurred within three years prior to the filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously." 3 Nimmer, § 12.05[A] (footnotes omitted). Furthermore, "each act of infringement is a distinct harm giving rise to an independent claim for relief." Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir.1992).

Thus, it would appear that plaintiff's third claim, which relates to infringements that allegedly occurred in the three years prior to the filing of the action, would be timely. Defendant, however, construes plaintiff's third claim as one of ownership, not infringement. Defendant then cites to Netzer v. Continuity Graphic Assocs., Inc., 963 F.Supp. 1308 (S.D.N.Y.1997). Netzer, however, is a case dealing with a claim of co-ownership in a copyright where the plaintiff admitted that his claims were claims of co-ownership and not infringement. See id. at 1315.

■ When a plaintiff brings an "infringement" action where the plaintiff is asserting that he is a co-owner of a copyright, such an action is not considered an infringement action because "an action for infringement between joint owners will not lie because an individual cannot infringe his own copyright. The only duty joint owners have with respect to their joint work is to account for profits." Weissmann v. Freeman, 868 F.2d 1313, 1318 (2d Cir.1989). In such cases, the claim accrues when a reasonably diligent person knows or has reason to know of the injury upon which the claim is premised. Merchant v. Levy, 92 F.3d 51, 56 (2d Cir.1996). Thus, the statute of limitations begins to

run when a plain and express repudiation of co-ownership is made. *See Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996); *Netzer*, 963 F.Supp. at 1315.

Plaintiff, however, does not contend that she is a co-owner of the copyrights to the Photographs. Rather, she contends that she is the sole owner, the material having been produced as works for hire, and that the defendant infringed her rights as such an owner. Thus, the immediate rationale for determining that a claim of co-ownership accrues not at the time of infringement, but rather at the time of a repudiation of co-ownership, namely, that co-owners cannot infringe each other, is not present in the instant case.

Oddly, although the defendant cites to *Netzer*, the language in his briefs indicates that he is not seeking to draw an analogy to the copyright co-ownership line of cases, but rather appears to rests his argument on the notion that the plaintiff's infringement claims are actually claims seeking to vindicate a property right in the Photographs themselves rather than a copyright, and therefore the statute of limitations should begin to run at the time the plaintiff knew that the defendant had the Photographs. (*See* Defend's Reply at 3.) That argument is without merit, since the third cause of action clearly states a claim based on copyright infringement, not on a possessory right to the Photographs.

Nevertheless, the defendant could urge the court to draw an analogy between cases involving disputes of copyright ownership in employer/employee relationships and the line of co-ownership in copyright cases. The Court does not decide whether such an argument, if made, would have merit because the parties have not fully briefed the issue, and because even if the Court were to find it meritorious, the de-

fendant would still not have met his burden on his motion because a disputed issue of fact exists. Namely, the plaintiff argues that she was not aware that the defendant was asserting exclusive copyright ownership over the disputed materials until 1999 when the defendant allegedly infringed the copyright. (*See* Oral Arg. of June 24, 1999, Tr. at 17.)

█ Plaintiff contends that she did not know or have reason to know that the defendant was asserting copyright ownership in the Photographs earlier than 1991 because she did not know, due to the defendant's alleged fraudulent concealment, of the existence of the Photographs at that time. Furthermore, she claims that even when the defendant published the 1991 book *The Last Days of John Lennon*, he did not assert copyright ownership. Instead, she claims that in the 1991 book, he merely stated "All photos courtesy of Frederic Seaman," and "All photos by Frederic Seaman, except where otherwise noted." (*See* Pl.'s Mem. of Law in Opp. at 12; LiCalsi Aff., Exh. E.) Further, she claims that the certificate of copyright registration relating to the book did not alert her to the defendant's intent to claim copyright ownership since that registration claimed a copyright only to the *text* of the book and not to the pictures. (*See* Pl's Mem. of Law in Opp. at 12; Crouch Aff, Exh 2.)

Even if the Court were to view the third claim as it would view a claim for co-ownership in a copyright, the defendant's motion would still be denied because it remains a disputed question of material fact when the plaintiff was put on notice of the defendant's claim of copyright ownership in the Photographs.[9] Viewing the evidence in the light most favorable to the plaintiff, the defendant began asserting

---

9. Consideration of the evidence relevant to the defendant's assertions or non-assertions of copyright ownership would require the Court to convert this portion of the motion to dismiss to a summary judgment motion. *See Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999). Again, as both parties have requested that the Court consider matters outside the pleadings relating to this issue, no formal notice to the parties would be necessary. *See Cantor v. NYP Holdings, Inc.*, 51 F.Supp.2d 309, 310 (S.D.N.Y. 1999).

copyright ownership in 1999. Thus, even under the theory that the plaintiff's claims should be viewed, for the purposes of the statute of limitations, like a claim of co-ownership, there would still be a disputed question of a material fact as to when the defendant made a plain and express claim of ownership. Because the defendant's motion would be denied under either the traditional statute of limitations approach to copyright infringement claims, or by analogy to the co-ownership cases, we deny the defendant's motion.

The defendant also moves to dismiss the plaintiff's sixth claim seeking an injunction against future infringements on the theory that the claim is barred by the statute of limitations. We deny this motion for the same reasons that we deny the motion relating to the third claim.

The plaintiff's fourth claim is entitled "Declaratory Judgment" and seeks a declaration that the plaintiff "is and always has been the rightful owner of the *copyrights* to the Photographs, and all other photographs, videotapes, or depictions of or including the Lennon Family or any member thereof that defendant created while employed by Lennon and/or Mrs. Lennon," and that the defendant "has no right to the *copyrights* to the Photographs or any other photographs, videotapes, or depictions of or including the Lennon Family or any member thereof that defendant created while employed by Lennon and/or Mrs. Lennon." (Second Amend. Compl. at ¶ 62 (emphasis added).)

As with the third claim, the defendant appears to argue that this claim is barred by the statute of limitations because it is actually a claim for property rights in the

Photographs to which the statute of limitations began to accrue at the time when the plaintiff became aware that the defendant possessed the Photographs. The defendant does not offer any support for the argument that the fourth claim is actually a claim for property rights in the actual Photographs. Indeed, the words in the complaint establish that this claim is one relating to copyright entitlements. Therefore, the plaintiff's claim did not begin to accrue at the moment she knew of the defendant's possession of the Photographs, as the defendant contends.

When exactly the plaintiff's fourth claim did begin to accrue is not an issue that the Court need decide here,[10] because, as discussed above, even if the claim began to accrue as early as the point when the plaintiff knew or should have known that the defendant was claiming copyright ownership in the Photographs, the plaintiff contends that she was not put on notice of the defendant's claim of copyright ownership until 1999. This is a disputed issue which we construe in plaintiff's favor, as we must at this stage, that would prevent dismissal of the claim.

The defendant alleges that the plaintiff's fifth cause of action, alleging fraud on the copyright office, is barred by the statute of limitations. Since the complaint alleges that the defendant wilfully misstated and/or failed to state a material fact in his copyright registration application in April 1999, the defendant's argument relating to his 1991 copyright application is baffling. There is no indication that the fifth cause of action is time-barred. Quite the contrary, the claim presents a possible question of ripeness. The claim alleges that as

10. The defendant does not argue that the statute of limitations should begin to accrue at the time she knew or had reason to know that the defendant was asserting sole copyright ownership in the disputed material. However, one case does suggest that a declaratory judgment for copyright ownership is subject to the three year statute of limitations, and that the limitations period starts to run at the time the plaintiff is aware of the defendant's

assertion of ownership. *See Aday v. Sony Music Entertainment Inc.*, 99 Civ. 0991, 1997 WL 598410 at *3–*5 (S.D.N.Y. Sept.25, 1997) (citing to a co-ownership case). *See also Fort Knox Music, Inc. v. Baptiste*, 47 F.Supp.2d 481, 1999 WL 253610 (S.D.N.Y. April 27, 1999). For the reasons stated above, the Court does not reach the question of at what moment the claim begins to accrue.

a result of the defendant's misstatements and omissions to the Copyright Office, the defendant *may* be granted a registration of copyright in the photograph entitled "John and Sean at the Beach." (*See* Second Amend.Compl. at ¶ 67 (emphasis added).) Thus, the claim rests, at least in part, on an anticipated and uncertain injury.

Although the defendant has not raised the ripeness doctrine, the Court is entitled to do so sua sponte, regardless of whether the issue is one drawing from Article III or prudential concerns. *See Reno v. Catholic Soc. Serv., Inc.*, 509 U.S. 43, 58 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). The Court requests briefing from the parties no later than sixty days from the date of this Opinion as to this issue. The Court is compelled to specify that such briefing shall be thorough, address the relevant matters, and be supported by applicable legal research.

### D. Claim Relating to Breach of Confidentiality Agreement

Finally, the defendant argues that the plaintiff's breach of contract claim—which is based on a confidentiality agreement—is time barred. Specifically, the defendant argues that the claim began to accrue in 1991, at the time of publication of the defendant's book, and is therefore untimely.

The applicable statute of limitations is six years. *See* N.Y.C.P.L.R. § 213(2). The general rule in New York is that the statute of limitations begins to run "when a contract is breached or when one party omits the performance of a contractual obligation." *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 80, 430 N.Y.S.2d 179, 186 (4th Dep't 1980). Nevertheless, it is also the rule that "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six

years prior to the filing of the suit." *See id.; see also Asian Vegetable Research and Dev. Ctr. v. Inst. of Int'l Educ.*, 944 F.Supp. 1169, 1177 (S.D.N.Y.1996); *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F.Supp. 1423, 1444 ("in employment contracts, for statute of limitations purposes, a new cause of action arises with every violation and the statute of limitations runs separately as to each."); *Shifa Servs., Inc. v. Port Auth. of New·York*, No. 96 Civ. 1361(AGS), 1997 WL 16062 *11 (S.D.N.Y. Jan.15, 1997).

We note that the contract in question, if valid, may have imposed on the defendant a continuing contractual obligation not to disclose information regarding the Lennons. For this reason, we find that at this stage of the litigation, the plaintiff's breach of contract claim is timely as pled, and the defendant's motion is denied. Similarly, the defendant's motion to dismiss the thirteenth cause of action, seeking an injunction against any future attempts to breach the contract, is denied.

## VI. Motion to Strike

The defendant moves to strike paragraphs 1–36 of the complaint stating that these paragraphs are scandalous, defamatory, and irrelevant. The motion is denied.

Pursuant to Fed.R.Civ.P. 12(f), a Court may order "any redundant, immaterial, impertinent or scandalous matter" be stricken from a pleading. Fed.R.Civ.P. 12(f). Motions to strike, however, "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *See, e.g., Food and Allied Serv. Trades Dep't v. Millfeld Trading Co.*, 841 F.Supp. 1386, 1392 (S.D.N.Y.1994) (quoting *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D.Conn. 1979)). The Second Circuit has instructed that motions made on the basis that the allegation is impertinent and immaterial shall be denied "unless it can be shown

that no evidence in support of the allegation would be admissible ... Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976).

■ The defendant argues that the sections of the complaint that discuss an alleged scheme by the defendant to remove articles from the plaintiff's home and the defendant's subsequent criminal conviction for larceny relating to such articles are not relevant to the copyright claims.[11] Setting aside the question of whether these portions of the complaint would be entirely irrelevant to the copyright claims, the defendant fails to acknowledge that the plaintiff's complaint is not limited to allegations of copyright infringement. It also includes claims such as conversion and return of chattels, to which a scheme to steal items from the plaintiff's home may be relevant. Further, the Court notes that the disputed portion of the complaint may be relevant to the resolution of various issues raised by the defendant, such as laches and statute of limitations. To name one example, the reference to the defendant's plea bargain in which he allegedly agreed to return any property he had wrongfully taken from the Lennon premises may bear on the question of at what point the plaintiff should be chargeable with knowledge of the defendant's possession of certain photographs.

In sum, because the defendant has failed to show that the allegations in paragraphs 1–36 have no bearing on the subject matter of the litigation, we deny the motion.

## VII. Motion to Dismiss for Failure to Comply with Rule 8(a)

The defendant also moves to dismiss the complaint for failure to comply with Fed. R.Civ.P. 8(a). Rule 8(a)(2) provides that a complaint "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). *See also* Fed.R.Civ.P. 8(e)(1) ("Each averment of a pleading shall be simple, concise, and direct.") When a complaint does not comply with this rule, the Court may strike portions of the complaint, or dismiss the complaint. *See Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir. 1995). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)).

■ The defendant claims that the complaint is confusing and verbose, and that it is difficult to decipher what claims the plaintiff is attempting to make. The Court cannot agree with the defendant's assertions that the complaint is confusing and difficult to decipher. The complaint is divided into three sections: "parties, jurisdiction and venue," "background facts," and the plaintiff's thirteen causes of action. The Court in reviewing the complaint and the defendant's motion to dismiss the plaintiff's causes of action did not have difficulty in ascertaining the substance of the plaintiff's allegations, and finds that the complaint does fairly put the defendant on notice of the claims asserted against him.

While clear, the background section of the complaint may contain more detail— and perhaps strikes a more bitter tone— than necessary to advance the legal claims at issue. Indeed, as we noted at oral argument, communications by both parties to the Court reflect the animosity underlying their soured relationship. Undoubted-

---

11. The defendant fails to particularize which portions of paragraphs 1–36 he alleges are scandalous, defamatory or irrelevant. It is clear that the defendant cannot in good faith allege that all these paragraphs should be stricken. For example, paragraphs 1, 3–4 constitute merely a description of the plaintiff, and a statement of venue and subject matter jurisdiction. The Court therefore has confined its analysis to the portions of the complaint that are mentioned with some minimal degree of specificity by the defendant.

ly, it would be more efficient if the parties, when before the Court, would make greater efforts to concentrate solely on the adjudication of their legal issues. Nevertheless, dismissal of the complaint is not appropriate here as the document is neither confused nor ambiguous. Nor is the complaint easily amenable to a motion to strike. This is in part due to the manner in which the complaint is written, and also due to the fact that certain details may be relevant to resolution of the defendant's affirmative defenses. For these reasons, and because the Court does not find that the complaint is so verbose as to require that any action be taken, the defendant's motion is denied.

### VIII. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The defendant argues that because the plaintiff's copyright claims ought to be dismissed, the Court lacks subject matter jurisdiction over the action. Because the copyright claims, which arise under federal law, remain in the suit, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The defendant's motion to dismiss for lack of subject matter jurisdiction is, therefore, denied.

### IX. Defendant's Assertion that Plaintiff Lacks Standing

The defendant's reply brief contains the assertion that the plaintiff's "claims · lack standing." The brief devotes four sentences to the issue, and provides no supporting case law. Furthermore, the timing of the defendant's argument did not afford the plaintiff the opportunity to brief the issue.

The Court does not understand the defendant's argument to relate to constitu-tional standing requirements—injury in fact, a casual connection between the injury and the conduct complained of, and redressability, see *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58 (2d Cir.1994) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))—but rather to prudential concerns.[12] Due to the untimely nature of the argument, the Court does not consider the defendant's claims at this time. Instead, the Court grants the defendant permission to raise the issue, with full briefing, when the parties submit briefing to the Court on the ripeness question discussed above.

### X. Defendant's Motion for Fees and Costs

The defendant's motion for fees and cost is without merit, and, indeed, without any supporting argument by the defendant. Therefore, the motion is denied.

### CONCLUSION

The defendant's motions are denied, except as follows: i) the plaintiff's claims for tortious interference with contract and prima facie tort are dismissed; ii) the plaintiff's claims for recovery of chattels and "conversion," are dismissed to the extent that these claims relate to the photographs contained in the 1991 book *The Last Days of John Lennon;* and iii) the plaintiff's unjust enrichment cause of action is dismissed because it is preempted by federal copyright law. Furthermore, the plaintiff is directed to submit to the Court briefing on the issue of the Court's jurisdiction over the material other than the Photographs in the copyright infringement claims, and the parties are directed to submit to the Court briefing on the issue of ripeness of the plaintiff's fraud on the Copyright Office

12. The relevant portion of the reply brief states: "Plaintiff's claims lack standing because Frederic Seaman was an employee of Lennono Music Corporation. Moreover, to the extent that Plaintiff claims that the photographs were works made for hire for John Lennon, the Estate of John Lennon is the proper party to bring this action. Plaintiff's Claim V for Fraud is allegedly perpetrated on the Copyright Office. Therefore, the Copyright office is the proper party to bring such a claim." (*See* Def's Reply at 5.)

claim. Papers on these issues should be submitted within sixty days from the date of this Opinion.

SO ORDERED.